# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

---

**Jayson K. Brown Individually And**
**as a Representative of a Class**
**Of Participants and Beneficiaries on Behalf of the**
**Peco Foods, Inc. Retirement Savings Plan**                    **PLAINTIFF**


**vs**                                                 **CAUSE NUMBER:** 3:25-cv-491-TSL-RPM

**Peco Foods, Inc., and Does 1 to 10 inclusive,**              **DEFENDANTS**

---

### PLAINTIFF'S CLASS ACTION COMPLAINT

---

1.     Plaintiff, Jayson K. Brown, individually and as representatives of a class of participants and beneficiaries of the Peco Foods, Inc. Retirement Savings Plan (the "Plan") brings this Employee Retirement Income Security Act of 1974 ("ERISA")[1] action on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3) and Rule 23 of the Federal Rules of Civil Procedure against Defendants, Peco Foods, Inc. ("Peco") and Does 1 through 10 for: (1) failure to comply with the Plan document; (2) breach of ERISA's fiduciary duties; and (3) violation of ERISA's prohibited transaction rules.

2.     ERISA requires a fiduciary to act "solely in the interest of participants . . . for the exclusive purpose of providing benefits to participants and beneficiaries; and defraying reasonable expenses of administrating the plan" to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to

---

[1] 29 U.S.C. §§1001–1461.

1

refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest." 29 U.S.C. §§ 1104(a)(1)(A)-(B); 1106(b)(1).

3.      The Fifth Circuit recognizes these duties as the "highest known to the law." *Bussian v. RJR Nabisco, Inc.,* 223 F. 3d 286, 294 (5th Cir. 2000). These duties require fiduciaries to have "an eye single to the interests of the participants and beneficiaries," *Donovan v. Bierwirth,* 680 F.2d 263, 271 (2d Cir. 1982), and "to deal fairly and honestly with beneficiaries," *Cunningham v. Cornell Univ.,* 145 S. Ct. 1020, 1025 (2025) ("*Cunningham*"). The Fifth Circuit also instructs ERISA fiduciaries that "conflicts of interest must be shunned." *Perez v. Bruister*, 823 F.3d 250, 261 (5th Cir. 2016).

4.      ERISA "Section 1106 supplements [a] fiduciary's general duty of loyalty to the plan's beneficiaries . . . by categorically barring certain transactions deemed 'likely to injure the pension plan.'" *Cunningham*, 145 S. Ct. at 1025.

5.      ERISA also mandates that fiduciaries must discharge their fiduciary duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. 1104(a)(1)(D). The Supreme Court has clearly stated that there is "no exemption from this duty. . ." *Kennedy v. Plan Administrator for DuPoint Savings and Investment Plan*, 555 U.S. 285, 300, 129 S. Ct. 865 (2009).

6.      As detailed below, instead of following the terms of the Plan, and loyally and prudently acting in the best interest of Plan Participants and avoiding prohibited transactions, Defendants chose to use Plan assets almost exclusively to benefit Peco, to the detriment of the Plan and its participants, by using over $4.8 million of Plan assets to offset Peco's contractual obligations to make matching contributions to the Plan, while using only $52,000 to offset Plan

expenses borne by participants and requiring Plan Participants to pay nearly $4 million in Plan expenses, both directly and indirectly, that should never have come out of their accounts.

7.      To remedy these fiduciary breaches and ERISA violations, Plaintiff, individually and as representative of a class of participants and beneficiaries of the Plan, brings this action on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3) to enforce Defendants' personal liability under 29 U.S.C. §1109(a) to make good to the Plan all losses resulting from each breach of fiduciary duty and to restore to the Plan any profits made through Defendants' use of the Plan's assets. In addition, Plaintiff seeks such other equitable or remedial relief for the Plan as the Court may deem appropriate.

## JURISDICTION AND VENUE

8.      This Court has exclusive subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq*.

9.      This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

10.     Venue is appropriate in this District within the meaning of 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District.

## PARTIES

11.     The Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. §1002(2)(A) and §1002(34) that covers eligible employees of Peco and is subject to the provisions of ERISA pursuant to 29 U.S.C. § 1103(a).

12.    Plaintiff Jayson K. Brown is a citizen of the State of Mississippi, was previously employed by Peco at their Canton, Mississippi location from 2018 through 2020, and was a participant in the Plan during the class period. As such, he is a participant under ERISA § 3(7), 29 U.S.C. § 1002(7).

13.    During the class period, Plaintiff's individual account was charged, and Plaintiff paid, for a share of the Plan's administrative expenses.

14.    Plaintiff has Article III standing to bring this action on behalf of the Plan because he suffered actual injuries through the misallocation of Plan assets by Defendants with regard to the Plan as it relates to his individual 401(k) account. This injury is fairly traceable to Defendants' unlawful conduct in using Plan assets for their own benefit and this harm is likely to be redressed by a favorable judgment providing appropriate equitable relief to the Plaintiff and to the class.

15.    Having established Article III standing, Plaintiff may seek recovery under 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), on behalf of the Plan and for relief that sweeps beyond his own injuries.

16.    The Plaintiff and all participants in the Plan did not have knowledge of all material facts (including, among other things, the misallocation of Plan assets in the form of forfeitures) necessary to understand that Defendants breached their fiduciary duties until shortly before this suit was filed.

17.    Having never managed a very large 401(k) Plan, Plaintiff, and all participants in the Plan, lacked actual knowledge of how Plan forfeitures should be allocated by the Defendants and also lacked actual knowledge of how Plan forfeitures were used by the Defendants.

18.    Peco is an Alabama-incorporated company that employes individuals and operates facilities in Mississippi, including in Canton, MS.

19.    Peco is the Plan sponsor under 29 U.S.C. § 1002(16)(B) and the Plan Administrator pursuant to 29 U.S.C. § 1002(16)(A) with broad authority over the administration and management of the Plan.

20.    The defendants sued by the fictitious names DOES 1 through 10, inclusive, are Plan fiduciaries unknown to Plaintiff who exercise or exercised discretionary authority or discretionary control respecting the management or disposition of its assets, or have had discretionary authority or discretionary responsibility in the administration of the Plan and are responsible or liable in some manner for the conduct alleged in the Complaint. Plaintiff will amend this Complaint to allege the true names and capacities of such fictitiously named defendants when they are ascertained.

### FIDUCIARY STANDARD REQUIRED UNDER ERISA AND FIFTH CIRCUIT

21.    Under ERISA, when making the decision regarding the use of Plan assets, Defendants have been and are required by 29 U.S.C. §§ 1104(a)(1)(A) to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; **and** (ii) defraying reasonable expenses of administering the plan." (emphasis added); *Cunningham*, 145 S. Ct. at 1025.

22.    Under 29 U.S.C. §§ 1104(a)(1)(B), ERISA "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets" *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 419 (2014), which requires fiduciaries to "act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would. . . .", 29 U.S.C. § 1104(a)(1)(B).

23.     The duties of loyalty and prudence are the "highest known to the law," *Bussian v. RJR Nabisco, Inc.,* 223 F. 3d 286, 294 (5th Cir. 2000), and require fiduciaries to "maximize retirement savings for participants", *Fifth Third Bancorp*, 573 U.S. at 420.

24.     Under ERISA, 29 U.S.C. § 1104 (a)(1)(D) also requires plan fiduciaries to discharge their duties "in accordance with the documents and instruments governing the plan . . ."

25.     Under ERISA, anyone who exercises discretion or control over plan assets, including Peco as Plan Sponsor and Plan Administrator, is a fiduciary (hereafter "Plan Fiduciaries" or "Defendants"). 29 U.S.C. § 1002(21)(A).

26.     As an individual account, defined contribution retirement plan, the Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34). As such, a participants' retirement benefit in a defined contribution plan equals (1) the amount of the participants' voluntary contributions; *plus* (2) the amount of any employer contributions; *plus* (3) any investment returns on those contributions; *minus* (4) plan and investment expenses. *Cunningham*, 145 S. Ct. at 1026 (explaining that defined contribution participants "maintain individual investment accounts within those plans, the value of which is determined by the market performance of employee and employer contributions, less expenses").

## FACTS APPLICABLE TO ALL COUNTS[2]

### A.  The Plan

27.    The Plan was created by Peco for the sole benefit of its eligible employees.

28.    In accordance with 29 U.S.C. § 1103(a), the Plan's operating documents provide that assets of the Plan are held in a trust fund "for the exclusive purpose of providing benefits to Participants under the Plan and their Beneficiaries and defraying reasonable expenses of administering the Plan."

29.    Throughout the class period the Plan paid direct and/or indirect compensation for services to administer the Plan ranging from, among others, recordkeeping and information management, administration, consulting, investment advisory, legal, trustee services, loan processing, and investment management services paid indirectly by the Plan. The Plan also paid other types of fees. Hereafter the payment for services from Plan assets (directly or indirectly) shall collectively be referred to as "Plan Administrative Expenses."

30.    The use of Plan assets to pay Plan Administrative Expenses from the accounts of Plan Participants reduces the funds available to Plan Participants for distribution and/or investing and deprives the Plan of funds that otherwise would have been earned on the amounts deducted.

31.    Throughout the class period, the Plan has been funded by a combination of wage withholdings by Plan Participants and Peco matching contributions, each of which is deposited into the Plan's trust fund and allocated to individual participant accounts.

---

[2] All factual assertions in this section are taken from: (1) documents provided by Defendants to Plaintiff's counsel, including the Plan's operative governing documents during the class period; and (2) the Plan's Form 5500s filed by Defendants with the Department of Labor and publicly available through the "DOL's" website at https://www.efast.dol.gov/5500Search/.

32.     Throughout the class period, the terms of the Plan require Peco to make matching contributions to the Plan based on each participant's contributions.

33.     Peco must pay all matching contributions that have accrued throughout a calendar year to the Plan trustee within a reasonable period of time after the end of the prior calendar year.

34.     Upon their deposit into the Plan's trust fund, all participant contributions and Peco contributions become assets of the Plan.

35.     Under the terms of the Plan, participants are immediately vested in their own contributions, as well as any actual earnings thereon. Participants are vested in Peco matching contributions and any actual earnings thereon based on various schedules, dependent on their employer group, typically ranging from four to six years before being fully vested.

36.     To the extent a participant is not 100% vested upon termination of employment, the participant forfeits the value of Peco contributions and any actual earnings thereon (hereafter "Forfeited Plan Assets") in his or her account on the earlier of the date the participant takes a distribution of his or her vested interest in the Plan or the date the participant incurs a five-consecutive-year break in vesting service (within the meaning of the Plan document).

37.     During the class period, the Plan document required Plan Fiduciaries to "*first*" use Forfeited Plan Assets "to pay administrative expenses [and any] remaining forfeitures, if any, may then be used to reduce" Peco's contribution obligations. (emphasis added).

**B.     Plan Fiduciaries' Disloyal and Conflicted Use of Forfeitures During Class Period**

38.     Yet throughout the class period, the Defendants consistently did not use the Forfeited Plan Assets to offset Plan Administrative Expenses prior to using the Forfeited Plan Assets to reduce Peco's contractually obligated contributions to the Plan resulting in a reduction in the value of Plaintiff and the Plan's accounts.

39.    Instead, the Plan Fiduciaries have consistently chosen to utilize essentially all Forfeited Plan Assets to benefit Peco by reducing Peco's contractually obligated contributions to the Plan and paying Plan Administrative Expenses from Plan assets *other* than Forfeited Plan Assets, *i.e.*, participants' accounts.

40.    From 2019 through 2023, the terms of the Plan obligated Peco to make contributions to the Plan in the following amounts: (1) in 2019, at least $4,285,160[3]; (2) in 2020, at least $4,866,670; (3) in 2021, at least $5,062,082; (4) in 2022, at least $5,203,374; (5) and in 2023, at least $5,091,201.

41.    From 2019 through 2023, the Plan Fiduciaries allowed Peco to offset its obligation to make contributions by allocating Forfeited Plan Assets in the following amounts: (1) in 2019, $689,600; (2) in 2020, $772,800; (3) in 2021, $1,311,900; (4) in 2022, $1,126,000; and (5) in 2023, $940,200. These actions saved Peco the respective amounts, which flowed directly to its bottom-line profit.

42.    From 2019 through 2023, the Plan Fiduciaries were required under the terms of the Plan and ERISA to direct the use of Forfeited Plan Assets in the following minimum amounts: (1) in 2019, approximately $730,300[4]; (2) in 2020, approximately $803,200; (3) in 2021, approximately $1,324,300; (4) in 2022, $1,156,400; and (5) in 2023, $1,006,900.

---

[3] Derived from the Plan's 2019-2023 Forms 5500s. For 2019, the figure was derived from Peco's disclosed contribution amount net of forfeitures of $3,595,560 plus $689,600 of Forfeited Plan Assets that were used to reduce Employer Contributions. This methodology was used for each subsequent year.

[4] Derived from the Plan's 2019-2023 Forms 5500s. For 2019, the amount of $730,300 represents the $689,600 of Forfeited Plan Assets that were used during the year plus the $40,700 in unallocated Forfeited Plan Assets in the plan on December 31, 2019. This methodology was used for each subsequent year.

43.    From 2019 through 2023, the Plan Fiduciaries caused Plan Participants to pay Plan Administrative Expenses through deductions from their accounts and indirectly through revenue sharing or similar methods. The minimum direct amounts paid by participants were: (1) in 2019, $757,193; (2) in 2020, $744,790; (3) in 2021, $741,564; (4) in 2022, $830,077; (5) and in 2023, $832,097.[5]

44.    From 2019 through 2023, the Plan Fiduciaries disloyally and imprudently used Forfeited Plan Assets to offset Peco's contribution obligations prior to first offsetting all Plan Administrative Expenses or allocating the Forfeited Plan Assets to eligible Plan Participants. The amounts used to offset Peco's obligations were: (1) in 2019, $689,600; (2) in 2020, $772,800; (3) in 2021, $1,311,900; (4) in 2022, $1,126,000; and (5) in 2023, $940,200.

45.    As of December 31, each year from 2019 through 2023, unallocated Forfeited Plan Assets remained unused in the following amounts: (1) in 2019, $40,700; (2) in 2020, $30,400; (3) in 2021, $12,400; (4) in 2022, $5,400; and (5) in 2023, $39,700.

46.    From 2019 through 2023, the Plan Fiduciaries only used $52,000 out of over $4.9 million Forfeited Plan Assets available to reduce Plan Administrative Expenses.

47.    The Plan's 2024 Form 5500 is not yet available, but, upon information and belief, the amount of unallocated Forfeited Plan Assets for calendar year 2023 (provided above) was substantially similar in calendar year 2024 and that in 2024 the Plan Fiduciaries again exercised discretion over, and control of, Plan assets by failing to use the unallocated Forfeited Plan Assets to pay Administrative Expenses or to allocate the Forfeited Plan Assets back to eligible participants in accordance with a definite formula defined in the Plan.

---

[5] The amount of Plan Administrative Expenses specifically identified in this Complaint likely understates the actual Plan Administrative Expenses paid by Plan Participants because the amounts do not include undisclosed indirect compensation paid by Plan Participants.

48.     The following chart demonstrates the Plan Fiduciaries' disloyal and conflicted use of forfeitures during the class period:

| YEAR | FORFEITURES USED FOR PECO | FORFEITURES USED FOR PLAN ADMIN EXPENSES | EXPENSES CHARGED TO THE PLAN (Direct Compensation) | BALANCE AT YEAR END NOT USED |
|---|---|---|---|---|
| 2019 | $689,600 | $0 | $757,193 | $40,700 |
| 2020 | $772,800 | $0 | $744,790 | $30,400 |
| 2021 | $1,311,900 | $0 | $741,564 | $12,400 |
| 2022 | $1,126,000 | $25,000 | $830,077 | $5,400 |
| 2023 | $940,200 | $27,000 | $832,097 | $39,700 |
| **Total** | **$4,840,500** | **$52,000** | **$3,905,721** | **$128,600** |

49.     Upon information and belief, the Plan Fiduciaries have continued to violate the explicit terms of the Plan Document by failing to use Forfeited Plan Assets to first pay the administrative expenses of the Plan.

**C.   Defendants' Plan and ERISA Fiduciary Violations Based on Forfeiture Use**

50.     Under the clear and unambiguous terms of the Plan, Plan Fiduciaries were required to "*first*" use Forfeited Plan Assets "to pay administrative expenses [and any] remaining forfeitures, if any, may then be used to reduce" Peco's contribution obligations. (emphasis added).

51.     Accordingly, under the terms of the Plan document, the Plan Fiduciaries did not have discretion related to the use of Forfeited Plan Assets.

52.     Under ERISA, when making the decision regarding the use of Forfeited Plan Assets, the Plan Fiduciaries have been and are required by 29 U.S.C. § 1104 (a)(1)(D) to discharge their duties "in accordance with the documents and instruments governing the plan . . . "

53.    As detailed above, the Plan Fiduciaries failed to follow the terms of the Plan when they failed to *first* use the Forfeited Plan Assets to cover the Plan Administrative Expenses.

54.    Even if the Plan did not require the Plan Fiduciaries to first use the Forfeited Plan Assets to cover Plan Administrative Expenses, which it does, ERISA and the Plan document granted discretion to the Plan Fiduciaries with respect to the use and control of Forfeited Plan Assets. The Plan Fiduciaries improperly, disloyally, and imprudently exercised that discretion to benefit Peco at the expense of the Plan and Plan Participants by failing to use unallocated Forfeited Plan Assets to pay Administrative Expenses or allocate back to Plan Participants and, instead, exercised that discretion to use Forfeited Plan Assets to reduce required Company contributions.

55.    Throughout the entire class period, any discretion given to the Plan Fiduciaries under the terms of the Plan and ERISA created a conflict of interest with respect to the Plan Fiduciaries' use of Forfeited Plan Assets. In other words, if the Plan Fiduciaries exercised their discretion to choose to allocate $4,840,500 of Forfeited Plan Assets (from 2019 through 2023) towards Peco's obligation, that decision would positively benefit the bottom-line profits of Peco by that amount.

56.    On the other hand, to the extent the Plan Fiduciaries exercised any discretion granted to them by Peco under the terms of the Plan to use the Forfeited Plan Assets to reduce both the direct and indirect Plan Administrative Expenses incurred by Plan Participants throughout the class period, that conduct would result in more money being available to provide retirement benefits to Plan Participants and the accounts of all Plan Participants would have contained more money for retirement benefits.

57.    In other words, if the Plan Fiduciaries had not acted contrary to the terms of the Plan and ERISA or, alternatively, not used their discretion (despite having multiple other options

available under the Plan and ERISA) to reduce employer contributions with plan assets, then $4,840,500 in additional assets (from 2019 through 2023) would have been contributed to the Plan and would have been invested by the Plan Participants.

58.     Crucially, had the Plan Fiduciaries used their discretion to use the $4,840,500 (from 2019 through 2023) in Forfeited Plan Assets to defray Plan Administrative Expenses or allocate the $4,840,500 in Forfeited Plan Assets back to Plan Participants to defray Plan Administrative Expenses, that would not have caused Peco to pay more than what Peco promised under the terms of the Plan. Rather, the Plan Fiduciaries' decision to allow Peco to offset its matching contributions with Forfeited Plan Assets caused Peco to pay $4,840,500 less than what Peco promised to contribute in matching contributions to the Plan under the terms of the Plan.

59.     The Plan Fiduciaries were motivated by self-interest and/or the interest of Peco when allocating Forfeited Plan Assets to offset Peco's matching contributions instead of reducing the Plan Participants' Plan Administrative Expenses or, alternatively failing to allocate the Forfeited Plan Assets back to the accounts of Plan Participants to be used to defray Plan Administrative Expenses, which reduced the value of both the Plan as a whole and the accounts of individual Plan Participants.

60.     In other words, contrary to the requirements of ERISA, to the extent that Defendants exercised their discretion, they exercised it solely for the exclusive purpose of reducing Peco's matching contributions to the Plan, thereby saving Peco millions of dollars at the expense of the Plan and Plan Participants and not for the purpose of "maximiz[ing] retirement savings for participants", as the Supreme Court requires of ERISA fiduciaries. *Fifth Third Bancorp*, 573 U.S. at 420.

61.     Consequently, throughout the class period, an objective analysis of the available options throughout the class period, guided solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants ***and*** defraying reasonable expenses of administering the Plan would indisputably eliminate the option of reducing future Employer Contributions instead of using Forfeited Plan Assets to defray Plan Administrative Expenses.

62.     Accordingly, under the minimum standard of care under the circumstances then prevailing, a prudent plan fiduciary having the discretion to select among several options related to the allocation of Forfeited Plan Assets, acting solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and defraying reasonable expenses of administering the plan, would choose options that would ensure that Forfeited Plan Assets were to allocated during the same year in which they arose.

63.     Additionally, throughout the class period, the Plan Fiduciaries improperly, disloyally, and imprudently exercised discretion when deciding to use Forfeited Plan Assets to reduce employer matching contributions.

64.     As described in detail above, throughout the class period, the Plan Fiduciaries' decisions to use Forfeited Plan Assets to reduce employer contributions was, all else being equal, in the best interest of Peco because that option decreased Peco's own contribution costs.

65.     Similarly, as described in detail above, throughout the class period, the Plan Fiduciaries' decisions to use Forfeited Plan Assets to reduce employer contributions prior to paying Plan Administrative Expenses or allocating the Forfeited Plan Assets to the accounts of eligible Plan Participants reduced the value of Plan assets and the accounts of Plan Participants and the benefits available to Plan Participants.

66. Further, as described in detail above, throughout the class period, the Plan Fiduciaries exercised discretion over, and control of, Plan Assets when directing the use of Participants' accounts to pay Plan Administrative Expenses to service providers.

67. There are no facts or circumstances throughout the class period that make discretionary decisions to use Forfeited Plan Assets to reduce Peco's contribution obligation consistent with discharging the Plan Fiduciaries' duties with respect to the Plan *solely* in the interest of the participants and beneficiaries **and for the exclusive purpose of providing benefits to participants** and their beneficiaries ***and*** **defraying reasonable expenses** of administering the Plan.

68. Moreover, as described in detail above, throughout the class period, the Plan Fiduciaries exercised discretion over, and control of, Forfeited Plan Assets and consistently and reflexively chose to use the Forfeited Plan Assets for their own exclusive interest, to the detriment of the Plan and Plan Participants, by allocating Forfeited Plan Assets toward reducing Peco's employer matching contribution obligation to the Plan while enabling Peco to increase its profits.

69. While Defendants benefited, the Plan and its participants and beneficiaries suffered. If Defendants decided throughout the class period to use Forfeited Plan Assets to defray the reasonable expenses of administering the Plan or allocated the forfeitures back to eligible participants, the value of the Plan and the value of the participants' individual accounts would have been greater thereby providing greater retirement benefits to Plan Participants and beneficiaries. Not because the Plan Participants would receive an additional benefit but because they would receive the full benefit they were entitled to under the Plan and ERISA for a defined contribution plan participant.

## TRANSACTIONS PROHIBITED BY ERISA

70.    ERISA "Section 1106 supplements [a] fiduciary's general duty of loyalty to the plan's beneficiaries . . . by categorically barring certain transactions deemed 'likely to injure the pension plan." *Cunningham*, 145 S. Ct. at 1025.

71.    ERISA Section 1106 (a) prohibits transactions that benefit a party in interest. 29 U.S. Code § 1106(a)(1)(A)-(E).

72.    ERISA Section 1106(b) prohibits a fiduciary of the plan from dealing with the assets of the plan in any way that benefits the fiduciary or is adverse to the plan participants' interest.  29 U.S. Code § 1106(b)(1)-(3).

73.    ERISA Section 3(14) defines a party in interest to include the Plan employer (in this case Peco) and a Plan fiduciary (in this case Peco).

74.     Under ERISA, anyone who exercises discretion or control over plan assets, including the Plan sponsor (Peco) and the Plan administrator (Peco), is a fiduciary. 29 U.S.C. § 1002(21)(A).

75.    The Supreme Court instructs that "[a]t the pleading stage, [] it suffices for a plaintiff plausible to allege the three elements" of a prohibited transaction claim "no more, no less." *Cunningham*, 145 S. Ct. 1020, 1028.

### DEFENDANTS ENGAGED IN SELF-DEALING AND CAUSED MANY PROHIBITED TRANSACTIONS IN VIOLATION OF ERISA

76.    From 2019 through 2023, the Plan Fiduciaries caused, directed, and authorized tens of thousands of transactions, both directly and indirectly, extracting money from the accounts, or reducing the net value of investment options held by Participants in the Plan, causing Plan Participants to pay nearly $4,000,000 directly for Plan Administrative Expenses as well as additional amounts indirectly.

77.     These transactions are memorialized in the statements received by each Plan Participant and are also memorialized in Plan level accounting, *e.g.*, a trust report of the Plan.

78.     Moreover, throughout at least a portion of the class period, Defendants directed and authorized Plan Participants to pay an indeterminable amount of indirect compensation for Plan Administrative Expenses.

79.     Had the Defendants acted in accordance with the terms of the Plan document and ERISA the Defendants should have directed the use of Forfeited Plan Assets to defray the Plan Administrative Expenses that Defendants instead required Plan Participants to pay through transactions from their individual accounts.

80.     Throughout the class period, Defendants also caused the Plan to engage in at least 24 transactions each year with Peco, a party in interest, related to Peco's contractual obligation to make matching contributions to the Plan. For each of these transactions, the Plan Fiduciaries coordinated with the recordkeeper and Peco to calculate how much Peco could reduce its obligatory payment to the Plan by offsetting the full amount owed with the use of Forfeited Plan Assets.

81.     In each of these instances, Defendants caused the Plan to engage in a transaction with Peco that directly resulted in a smaller amount of money being paid by Peco into the Plan.

82.     In other words, at least 24 times each year the Plan Fiduciaries engaged in calculations for the express purpose of calculating how much money Peco could save from its contractual obligation to the Plan by using Forfeited Plan Assets to offset the amount of Peco's contribution.

83.     As noted above, each of these transactions are also memorialized in the Plan trust reports.  Each of these transactions then serves to provide the assets necessary to execute thousands

of transactions to invest Peco contributions and Forfeited Plan Assets pursuant to the investment instructions of Plan Participants.

84.    In other words, each of these transactions involves the receipt of Peco contributions and calculations related to Forfeited Plan Assets to enable a combination of Forfeited Plan Assets and Peco contributions to be combined for use in following the investment instructions of thousands of Plan Participants.

85.    As part of the same conduct, at least once a year (and likely at least 24 times a year) Defendants caused the Plan to engage in transactions that both directly and indirectly provided a benefit to a party in interest, *i.e.,* Peco, in the amount of Forfeited Plan Assets used to reduce Peco's contractual obligation to the Plan.

86.    In other words, throughout the class period, the Plan Fiduciaries engaged in the conduct of making calculations that caused the Plan to receive at least $4,840,500 less in Peco contributions than what Peco was obligated to make and which increased Company profits by at least $4,840,500.

87.    Additionally, the Defendants caused the Plan to engage in these transactions with Peco that constituted and resulted in the use of Forfeited Plan Assets for the direct and indirect benefit of Peco, a party in interest and Plan Fiduciary.

88.    Throughout the Class Period, by directing, authorizing, and causing at least six transactions with Peco and tens of thousands of transactions with Plan Participants, Defendants dealt with the Forfeited Plan Assets in their own individual interest and in Peco's interest by using Forfeited Plan Assets to offset Peco's contractual obligations to the Plan.

89.    Throughout the Class Period, by directing, authorizing, and causing at least six transactions with Peco and tens of thousands of transactions with Plan Participants, the individual

Plan Fiduciaries acted in their individual capacity and as agents of a party in interest, *i.e.*, Peco, whose interests are adverse to the Plan or Plan Participants.

90.     Throughout the Class Period, by directing, authorizing, and causing at least six transactions with Peco and tens of thousands of transactions with Plan Participants, the individual Plan Fiduciaries received consideration for their own personal accounts from Peco as a result of their control over the transactions described above with a party in interest, *i.e.*, Peco, involving the Forfeited Plan Assets, that enabled Peco to reduce its costs and increase its profits thereby benefiting each individual Plan Fiduciary.

## **CLASS ACTION ALLEGATIONS**

91.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

92.     In acting in their representative capacity for the Plan, Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiff seeks to certify, and to be appointed as representative of, the following class:

> All participants and beneficiaries of the Peco Savings and Investment Plan (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) beginning July 3, 2019, and running through the date of judgment.

93.     The class includes around 7,000 members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

94.     There are questions of law and fact common to this class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary duties to the Plan and took the actions and omissions alleged as the Plan and not as to any individual participant. Thus, common questions of law and fact include but are not limited to the following:

19

a.      Whether Defendants are fiduciaries liable for the remedies provided
        by 29 U.S.C. § 1109(a);

b.      Whether Defendants breached their duty to follow the terms of the
        Plan;

c.      Whether Defendants breached their fiduciary duties to the Plan with
        respect to their management and allocation of Forfeited Plan Assets;

d.      Whether Plan Fiduciaries engaged in prohibited transactions with
        Forfeited Plan Assets;

e.      What are the losses to the Plan resulting from each alleged breach
        of ERISA; and

f.      What Plan-wide equitable and other relief the Court should impose
        to remedy Defendants' alleged breaches.

95.     Plaintiff's claims are typical of the claims of the class pursuant to Federal Rule of

Civil Procedure 23(a)(3), because Plaintiff was a participant during the time period at issue and all

participants in the Plan were harmed by Defendants' misconduct.

96.     Plaintiff will adequately represent the class pursuant to Federal Rule of Civil

Procedure 23(a)(4), because he was a participant in the Plan during the class period, has no interest

that conflicts with the class, is committed to the vigorous representation of the class, and has

engaged experienced and competent lawyers to represent the class.

97.     Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because

prosecution of separate actions for these breaches of fiduciary duties by individual participants and

beneficiaries would create the risk of inconsistent or varying adjudications that would establish

incompatible standards of conduct for Defendants concerning its discharge of fiduciary duties to

the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a); and adjudications by

individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies

for the Plan would, as a practical matter, be dispositive of the interests of the participants and

beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

98.     Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

99.     Plaintiff's attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the class.

**COUNT I**
**Breach of the Duty to Follow Terms of the Plan Document**
**(29 U.S.C. 1104(a)(1)(D))**

100.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

101.     As alleged herein, 29 U.S.C. 1104(a)(1)(D) imposes a fiduciary duty to act in accordance with the Plan documents and instruments governing the Plan.

102.     The Plan required the Defendants to use the Forfeited Plan Assets from Plan year 2024 to pay all Plan Administrative Expenses (both direct and indirect) prior to using Forfeited Plan Assets to reduce Peco's required contributions. Defendants failed to discharge their duty to act in accordance with the Plan document by using Forfeited Plan Assets to reduce employer contribution obligations in violation of the explicit terms of the Plan.

103.     As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan and class suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty to follow the terms of the Plan document.

104.    Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge their own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

105.    Plaintiff and the class have suffered losses as a direct result of the Defendants' breach of their fiduciary duty to follow the terms of the Plan document.

## COUNT II
### Breach of ERISA's Fiduciary Duty of Loyalty
### (29 U.S.C. 1104(a)(1)(A))

106.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

107.    When exercising discretion and control over Forfeited Plan Assets and using them to reduce Peco contributions, instead of defraying the reasonable costs of administering the Plan or allocating the Forfeited Plan Assets back to eligible Plan Participants, the Plan Fiduciaries considered the best interest of Peco as opposed to participants, in violation of ERISA.

108.    When improperly exercising discretion and control over Forfeited Plan Assets and failing to use them to defray the reasonable costs of administering the Plan or allocating them back to the accounts of eligible Plan Participants, the Plan Fiduciaries considered the best interests of Peco, as opposed to Plan Participants, in violation of ERISA.

109.    When exercising control over Forfeited Plan Assets, the Plan Fiduciaries failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, when those aims are to act *solely* in the

interest of the Plan Participants and beneficiaries **and for the exclusive purpose of providing benefits to Plan Participants** and their beneficiaries **and defraying reasonable expenses** of administering the Plan in violation of ERISA.

110.    As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan and class suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.

111.    Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

112.    Plaintiff and the class have suffered losses as a direct result of the Defendants' breach of their duty of loyalty.

## COUNT III
### Breach of ERISA's Fiduciary Duty of Prudence
### (29 U.S.C. 1104(a)(1)(B))

113.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

114.    When exercising discretion and control over Forfeited Plan Assets and using them to reduce Peco contributions, the Plan Fiduciaries failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with

like aims, when those aims are to act *solely* in the interest of the Plan Participants and beneficiaries **and for the exclusive purpose of providing benefits to Plan Participants** and their beneficiaries *and* **defraying reasonable expenses** of administering the Plan, in violation of ERISA.

115.    When deciding how to allocate Forfeited Plan Assets, Defendants utilized an imprudent and flawed process. Despite the conflict of interest presented by alternatives under both ERISA and the Plan document, Defendants failed to undertake any reasoned and impartial decision-making process to determine whether using the Forfeited Plan Assets to reduce the Peco's own contribution expenses, as opposed paying Plan Administrative Expenses or for other purposes allowable under ERISA, was in the best interest of the Plan's participants or was prudent, and failed to *solely* consider which alternative would promote the **exclusive purpose of providing benefits to Plan Participants** and their beneficiaries **and defraying reasonable expenses** of administering the Plan, in violation of ERISA.

116.    By refusing to use Forfeited Plan Assets to eliminate Plan Administrative Expenses that were instead charged to participant accounts, and instead deciding to use these Plan assets to reduce the Peco's own contribution expenses, Defendants imprudently caused the value of the Plan's assets to decrease by causing Plan Participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the Forfeited Plan Assets to pay Plan Administrative Expenses.

117.    Had the Plan Fiduciaries conformed with the minimum standard of care required under ERISA, the Plan Fiduciaries would not have used Forfeited Plan Assets to reduce Peco's contribution obligation.

118.    Alternatively, had the Plan fiduciaries conformed with the minimum standard of care required under ERISA, they would have used Forfeited Plan Assets to defray reasonable expenses of administering the Plan.

119.    Plaintiff and the class have suffered losses as a direct result of the Defendants' breach of their duty of prudence.

## COUNT IV
### Fiduciary Prohibited Transactions/ Self-Dealing
### (29 U.S.C. 1106(b))

120.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

121.    29 U.S.C. § 1106(b) provides that "[a] fiduciary with respect to a plan shall not (1) deal with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

122.    Defendants were and continue to be Plan Fiduciaries. In their management and control of Forfeited Plan Assets, Defendants caused the Plan to use Plan assets (Forfeited Plan Assets) to fund Peco's contractual obligation to make employer matching contributions to the Plan. By allocating these Plan assets toward offsetting Peco's contribution obligations, Defendants saved Peco millions of dollars in employer matching contribution expenses. Defendants therefore dealt with the assets of the Plan in their own interest or for Peco's own account, in violation of 29 U.S.C. § 1106(b)(1).

123.    Additionally, Defendants in their individual capacity or as an agent of Defendant Peco acted in a transaction involving the Plan on behalf of a party (Defendant Peco) whose interests are adverse to the interests of the Plan and the interests of Plan Participants and their beneficiaries in violation of  29 U.S.C. § 1106(b)(2) and received consideration for their own personal accounts from parties dealing with the Plan in connection with transactions involving the assets of the Plan (Forfeited Plan Assets) in violation of 29 U.S.C. § 1106(b)(3).

124.    As a result of this prohibited conduct, Defendants caused the Plan and Plan Participants and class to suffer losses in the amount of the Plan assets that were substituted for employer matching contributions and lost earnings on those assets.

125.    Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

### COUNT V
### Fiduciary Prohibited Transactions/ Self-Dealing
### (29 U.S.C. 1106(a))

126.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

127.    29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect. . . exchange. . . of any property between the plan and a party in interest . . . or use by or for the benefit of a party in interest, of any assets of the plan."

128.    Defendants are parties in interest, as that term is defined under 29 U.S.C. § 1002 (14), because they are Plan Fiduciaries and because Peco is the employer of Plan Participants.

129.    When Defendants elected to use Forfeited Plan Assets as a substitute for future employer contributions to the Plan, thereby saving Peco millions of dollars in contribution expenses, Defendants caused the Plan to engage in transactions that constituted a direct or indirect exchange of existing Plan assets for future employer contributions and/or use of Plan assets by or for the benefit of a party in interest.

130.    As a result of these prohibited transactions, Defendants caused the Plan to suffer losses in the amount of the Forfeited Plan Assets that were substituted for employer matching contributions and lost investment returns on those assets.

131.    Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

## PRAYER FOR RELIEF

For these reasons, Plaintiff, on behalf of the Plan and all similarly situated participants and beneficiaries, respectfully requests that the Court:

- Find and declare that Defendants failed to follow the terms of the Plan, breached their fiduciary duties, and engaged in prohibited conduct and transactions as described above;

- Find and adjudge that Defendants are personally liable to make good to the Plan all losses to the Plan resulting from each violation of ERISA described above, and to otherwise restore the Plan to the position it would have occupied but for these violations;

- Order the disgorgement of all assets and profits secured by Defendants as a result of each violation of ERISA described above;

- Determine the method by which Plan losses under 29 U.S.C. §1109 should be calculated;

- Order Defendants to provide all accounting necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C. § 1109(a);

- Remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

- Surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive, and/or in violation of ERISA;

- Certify the class, appoint Plaintiff as class representative, and appoint the Chirinos Law Firm PLLC and Horan & Horan, PLLC as class counsel;

- Award to Plaintiff and the class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

- Order the payment of interest to the extent it is allowed by law; and

- Grant other equitable or remedial relief as the Court deems appropriate.


**RESPECTFULLY SUBMITTED,** this the   7th   day of July, 2025.


**Horan & Horan, PLLC**

/s/ *Bradley D. Daigneault*

M. Kevin Horan, MSB #2638
Bradley D. Daigneault, MSB # 105069
1500 Gate Way
Post Office Box  2166
Grenada, Mississippi   38902
Telephone: (662) 226-2185
Facsimile: (662) 2262127
Email: horanmain@horanandhoranlaw.com

**CHIRINOS LAW FIRM PLLC**
Tulio D. Chirinos (*pro hac vice* forthcoming)
370 Camino Gardens Blvd., Ste 106
Boca Raton, FL 33432

28

Telephone: (561) 299-6334
tchirinos@chirinoslawfirm.com

*Attorneys for Plaintiff and Proposed Class*