IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAYSON K. BROWN, INDIVIDUALLY
AND AS A REPRESENTATIVE OF A
CLASS OF PARTICIPANTS AND
BENEFICIARIES ON BEHALF OF THE
PECO FOODS, INC. RETIREMENT
SAVINGS PLAN                                                            PLAINTIFFS

VS.                                              CIVIL ACTION NO. 3:25-cv-491-TSL-RPM

PECO FOODS, INC. AND JOHN DOES
1-10, INCLUSIVE                                                          DEFENDANTS

**MEMORANDUM IN SUPPORT OF DEFENDANT
PECO FOODS, INC.'S MOTION TO DISMISS**

Defendant Peco Foods, Inc. ("Peco") respectfully submits this Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint, which asserts claims under the Employee Retirement Income Security Act of 1974 ("ERISA"). As demonstrated below, the Court should dismiss the Complaint in its entirety, with prejudice, under (1) Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff fails to state a claim upon which relief can be granted, and (2) Rule 12(b)(1) because Plaintiff lacks Article III standing.

### I.   INTRODUCTION

This is a putative class action in which Plaintiff alleges that Peco and the John Doe Defendants (collectively "Peco") violated ERISA in administering the Peco Foods, Inc. Retirement Savings Plan ("the Plan") by reallocating forfeited assets to reduce employer contributions. According to Plaintiff, these reallocations breached Peco's duty to follow the terms of the Plan document, Peco's fiduciary duties of prudence and loyalty, and constituted prohibited transactions. But Plaintiff's claims rest on a fundamental misreading of both the Plan and the law. The Plan

expressly authorizes the use of forfeitures for administrative expenses, to offset employer contributions, *or* to allocate them to participant accounts. These uses are also consistent with over fifty years of federal regulations. ERISA does not require an employer to maximize participant benefits or to use forfeitures in the manner Plaintiff prefers. Accordingly, the Court should dismiss the Complaint pursuant to Rule 12(b)(6).

## II. FACTUAL BACKGROUND AND PLAINTIFF'S CLAIMS

### A. The Plan and Plaintiff's Participation

The Plan is a defined contribution, individual account plan under ERISA. Compl. ¶ 6; *see also* 29 U.S.C. § 1002(34). Each participant's benefit depends on the assets in his or her account, including gains or losses. *Id.*; Compl. ¶ 26. Peco serves as both the Plan's sponsor and administrator. *Id.* ¶ 19.

The Plan helps employees save for retirement through voluntary deferrals and employer contributions. *Id.* ¶ 26; Ex. 1, Plan §§ 3.01, 3.02. Peco provides three types of employer contributions: (1) matching contributions for eligible participants who contribute to the Plan, *see id.* § 3.01; Ex. 2, Summary Plan Description ("SPD") pp. 6-8, (2) discretionary contributions, Ex. 1, Plan § 3.01, 3.06, Ex. 2, SPD pp. 8-9, and (3) qualified nonelective contributions, Ex. 1, Plan § 3.01, Ex. 2, SPD pp. 9-10. Once deposited into the Plan's trust, all contributions become Plan assets. Compl. ¶ 34.

### B. Plan Administrative Expenses

Like all retirement plans, the Plan incurs administrative expenses, which either Peco or Plan assets may pay, provided such payments comply with ERISA. Ex. 1, Plan § 9.02. These expenses include ERISA-required bonding, recordkeeping services, trustee or annuity fees,

investment education, and direct costs incurred by Peco. *Id.* When the Plan pays these expenses, the plan administrator allocates them against participant accounts. Ex. 2, SPD pp. 27-28.

### C. Plan Forfeitures

Forfeitures arise when a participant leaves employment before completing five years of service and thereby forfeits non-vested employer contributions. Ex. 1, Plan § 3.05; Ex. 2, SPD pp. 12–13. Participants have no entitlement to these forfeited amounts. The Plan grants Peco full discretion in reallocating forfeitures, providing that "[f]orfeitures may first be used to pay administrative expenses. Remaining Forfeitures, if any, may then be used to reduce Employer Contributions (other than Elective Deferral Contributions) made after the Forfeitures are determined." Ex. 1, Plan § 3.05. The SPD confirms that Peco "may use forfeitures to pay plan expenses, offset our next contributions, or reallocate the amounts to participant accounts." Ex. 2, SPD p. 12.

### D. Plaintiff's Claims

Plaintiff alleges that from 2019 to 2023, Peco misused over $4.8 million in forfeited plan assets by applying them to reduce Peco's matching contributions instead of using them to pay administrative expenses or reallocating them to participants' accounts. Compl. ¶¶ 6-7, 38-49. He claims that Peco used nearly all forfeitures to reduce its required contributions and only $52,000 to offset administrative expenses, and that as a result, participants paid nearly $4 million in administrative expenses directly or indirectly from their accounts. *Id.* ¶¶ 30, 43, 44, 46. Plaintiff contends that these practices violate the Plan's terms and multiple ERISA fiduciary duties and prohibitions. *Id.* ¶¶ 54-60.

Plaintiff asserts five causes of action against Peco, all based on the use of forfeited Plan assets: (1) breach of duty to follow the Plan terms (29 U.S.C. § 1104(a)(1)(D)) for allegedly

failing to apply forfeitures in accordance with the Plan's mandatory allocation sequence (Compl. ¶¶ 50–53, 100–105); (2) breach of the fiduciary duty of loyalty (29 U.S.C. § 1104(a)(1)(A)) for allegedly prioritizing Peco's financial interests by using forfeitures to offset employer contributions instead of participant-borne expenses (Compl. ¶¶ 54-60, 106-112); (3) breach of the fiduciary duty of prudence (29 U.S.C. § 1104(a)(1)(B)) for allegedly lacking a prudent process and failing to objectively evaluate alternative uses of forfeitures; (4) prohibited transactions: self-dealing (29 U.S.C. § 1106(b)) for allegedly dealing with Plan assets in their own interest or on behalf of a party in interest (Peco) (Compl. ¶¶ 68-69, 120-125); and (5) prohibited transactions: party-in-interest (29 U.S.C. § 1106(a)) for allegedly causing the Plan to engage in transactions involving the use of Plan assets for the benefit of Peco, a party in interest (Compl. ¶¶ 70-90, 126-131).

### III.   LEGAL ARGUMENT

#### A.   Standard of Review

Under Rule 12(b)(6), dismissal is appropriate when a plaintiff's allegations fail "to state a claim upon which relief can be granted." To survive dismissal, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010). "To be plausible, 'the complaint's factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This is a "context-specific task that requires the reviewing court to draw on its judicial expertise and common sense." *Id.* at 679.

The Court must "accept all well pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Great Lakes*, 624 F.3d at 210. However, the Court should not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* Likewise, "a formulaic recitation of the elements of a cause of action will not do." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). Ultimately, the Court's task "is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

"The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, LLP*, 912 F.3d 759, 763 (5th Cir. 2019). The Court may also consider matters of public record, *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995), and any other matters of which it may take judicial notice. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

Plaintiff repeatedly cites the Plan document in his Complaint but failed to attach this key document. Nor did he attach a copy of the SPD, which is "the statutory plain-language mechanism for informing plan participants of the terms of the plan and its benefits." *Hicks v. Fleming Cos., Inc.*, 961 F.2d 537, 539 (5th Cir. 1992).

Despite Plaintiffs' omission of these key documents, the Court should allow Peco to introduce them in support of its Motion to Dismiss because they are central to Plaintiffs' claims. *See, e.g., Baldwin v. Laurel Ford Lincoln-Mercury, Inc.*, 32 F. Supp. 2d 894, 898 (S.D. Miss. 1998) (finding that because plaintiff based her claims on retail installment contract, defendant could

introduce document in motion to dismiss without converting it to motion for summary judgment); *DeGrooth v. General Dynamics Corp.*, 837 F. Supp. 485, 486-87 (D. Conn. 1993) (holding district court could consider SPD of employee welfare benefit plan without converting employer's dismissal motion into summary judgment motion in employees' action challenging reduction in benefits; employees were on notice of contents of SPD, and it was integral to their claims); *Chambers v. Montana Contractors Ass'n Health Care Trust*, 797 F. Supp. 2d 1050, 1053 (D. Mont. 2009) (ruling on ERISA plan administrator's motion to dismiss plan participant's suit, district court could consider SPD without converting motion to motion for summary judgment, where participant's claims necessarily relied on SPD's contents); *Agway, Inc. Employees' 401(k) Thrift Investment Plan v. Magnuson*, 2006 WL 2934391, at *27 n.12 (N.D.N.Y. Oct. 12, 2006) ("While the Plan itself is attached to and incorporated by reference into the plaintiffs' amended complaint, the SPD is not. In light of the nature of the SPD and its potential legal significance to plaintiffs' claims, its contents nonetheless may properly be considered in ruling upon a 12(b)(6) dismissal motion.").

### B.   Plaintiff's Forfeiture Claims Fail under ERISA.

Plaintiff does not allege that Peco has denied any benefits promised to him under the Plan. Instead, he seeks to impose a new obligation: the mandatory use of forfeited Plan assets to pay administrative expenses. However, the plain language of the Plan does not require such use, and ERISA does not mandate that fiduciaries provide benefits beyond those described in the governing documents. Plaintiff's theory—that Peco must always use forfeitures to first cover plan expenses—conflicts with the Plan's text, lacks legal support, and is implausibly broad.  Indeed, over the past two years, federal courts across the country have rejected the same allegations and claims that Plaintiff asserts here and have dismissed those claims.  *See, e.g., Hutchins v. HP Inc.*, 767 F. Supp.

3d 912 (N.D. Cal. 2025) (finding where terms of plan comply with ERISA, plan fiduciary is not authorized to provide participants with more benefits than plan sets out); *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 2025 WL 1248922 (D. Ariz. Apr. 30, 2025) (recognizing ERISA does not create duty to maximize pecuniary benefits and Form 5500s did not create any binding legal obligation to pay plan expenses); *McWashington v. Nordstrom, Inc.*, 2025 WL 1736765 (W.D. Wash. June 23, 2025) (finding plan document explicitly gave defendants discretion regarding use of forfeited contributions and defendants did not breach any fiduciary duty because they adhered to plan guidelines in all capacities); *Bozzini v. Ferguson Enters. LLC*, 2025 WL 1547617 (N.D. Cal. May 29, 2025) (noting that simple allegation that defendants used forfeited funds for their benefit failed to illustrate a plausible allegation); *Barragan v. Honeywell Int'l Inc.*, 2024 WL 5165330 (D.N.J. Dec. 19, 2024) (granting dismissal because plan expressly permitted use of unvested contributions to offset future employer contributions and unvested contributions never left plan but instead were used pursuant to defendant's obligations); *Hutchins v. H.P. Inc.*, 737 F. Supp. 3d 851 (N.D. Cal. 2024) (stating plaintiff's forfeiture "theory of liability has broad reach, and it is the theory's breadth that makes it implausible"); *Naylor v. BAE Sys., Inc.*, 2024 WL 4112322 (E.D. Va. Sept. 5, 2024) (dismissing all seven of plaintiff's causes of action pursuant to Rule 12(b)(6) because defendants adhered to unambiguous terms of plan); *Dimou v. Thermo Fisher Sci. Inc.*, 2024 WL 4508450 (S.D. Cal. Sept. 19, 2024) (finding incidental benefit provided to employers through reduction in future contributions was outweighed by value of pension benefits paid to plan participants in future); *McManus v. Clorox Co.*, 2024 WL 4944363 (N.D. Cal. Nov. 1, 2024) (dismissing all six of plaintiffs' claims, including prohibited transaction claim because use of forfeited contributions to offset future employer contributions does not constitute "transaction" under ERISA).

The Court should follow the well-reasoned precedent of these cases and dismiss all five of Plaintiff's causes of action. To do otherwise would require the Court to disregard the Plan's clear and unambiguous terms and to overlook five decades of established federal regulatory guidance.

1. <u>Plaintiff Fails to State a Claim for Breach of Plan Terms Because the Plan Expressly Permits Peco's Forfeiture Reallocations (Count I).</u>

Plaintiff's theory that he is entitled to additional plan benefits based on how Peco reallocates forfeitures is contrary to both the unambiguous terms of the Plan and long-established ERISA principles. The Plan expressly grants Peco discretion in reallocating forfeitures, providing that "[f]orfeitures *may* first be used to pay administrative expenses. Remaining Forfeitures, if any, *may* then be used to reduce Employer Contributions (other than Elective Deferral Contributions) made after the Forfeitures are determined." Ex. 1, Plan § 3.05 (emphasis added). The SPD reinforces this discretionary authority, confirming that Peco "*may* use forfeitures to pay plan expenses, offset our next contributions, *or* reallocate the amounts to participant accounts." Ex. 2, SPD p. 12 (emphasis added). Despite the words "may" and "or," Plaintiff asserts that Peco <u>must</u> first use forfeitures to pay administrative expenses—an argument that is inconsistent with the Plan and the SPD. *See Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 2000) (finding that agreement created discretion in administrator because terms stated administrator "*may* adopt reasonable policies, procedures, rules, and interpretations to promote the orderly and efficient administration of this agreement") (emphasis added); *Hixson v. Liberty Corp.*, 964 F. Supp. 218, 224 (W.D. La. 1997) ("[T]he word 'may' vests discretionary power in the administrator; it is unnecessary that the Plan language specifically state that an administrator has discretion for it to be so.").

Plaintiff's position is also incongruent with ERISA law. ERISA does not mandate specific benefits or require employers to assume any particular funding obligations. As the Supreme Court

has made clear, "[n]othing in ERISA requires employers to establish employee benefit plans," nor does it "mandate what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). ERISA imposes no obligation on employers to pay administrative fees out-of-pocket. *See*, *e.g.*, *Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011) ("ERISA does not create any fiduciary duty requiring employers to make pension plans more valuable to participants" by paying plan expenses).

Plaintiff concedes that the written terms of the Plan control. *See* Compl. ¶ 5; 29 U.S.C. § 1102(a)(1); *U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 100–01 (2013) ("The statutory scheme, we have often noted, is built around reliance on the face of written plan documents."); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). The Fifth Circuit has strictly enforced this principle, holding that courts must adhere to the "clear and unambiguous" language of the governing plan document. *McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506, 511 (5th Cir. 2000) (citing *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 938 (5th Cir. 1993)).

Moreover, permissive language within a plan does not require a fiduciary to maximize participant benefits. *See Collins v. Pension & Ins. Comm. of the S. Cal. Rock Prods. & Ready Mixed Concrete Ass'n*, 144 F.3d 1279, 1282 (9th Cir. 1998) ("ERISA does not create an exclusive duty to maximize pecuniary benefits."). Because the Plan allows Peco to use forfeitures *either* to pay expenses *or* to reduce its contributions, Plaintiff's contention that Peco *must* use them to pay expenses fails as a matter of law.

Peco's use of forfeitures to reduce its contributions is not only permitted by the Plan—it is endorsed by longstanding federal regulations. For more than half a century, Treasury regulations have explicitly authorized the use of forfeitures to offset employer contributions in defined

contribution plans. *See* 26 C.F.R. § 1.401-7(a) (1963) ("The amounts so forfeited must be used as soon as possible to reduce the employer's contributions under the plan.").

Consistent with this principle, courts have recognized that reallocating forfeitures to offset employer contributions is entirely lawful. *See Sievert v. Knight-Swift Transp. Holdings, Inc.*, 2025 WL 1248922, at *4 (D. Ariz. Apr. 30, 2025) ("To find that Defendant's decision to use forfeited assets to reduce its own contributions is motivated by self-interest and violates its duties of loyalty or prudence would contravene decades of federal regulations suggesting that such a decision is entirely permissible."); *Dimou v. Thermo Fisher Sci. Inc.*, 2024 WL 4508450, at *9 (S.D. Cal. Sept. 19, 2024) (finding years of federal regulations persuasive in evaluating similar forfeiture allegations).

Most recently, the Treasury Department reaffirmed this principle by proposing new regulations confirming that forfeitures in defined contribution plans may be used to pay administrative expenses or "reduce employer contributions under the plan." *Use of Forfeitures in Qualified Retirement Plans*, 88 Fed. Reg. 12283, 12285 (proposed Feb. 27, 2023). Plaintiff's theory—that reallocating forfeitures to offset employer contributions violates ERISA—directly contradicts this longstanding federal regulatory guidance.

In short, Plaintiff's claim that Peco breached the terms of the Plan rests on a misreading of the Plan and a disregard of well-established statutory and regulatory authority. Because the Plan permits Peco's forfeiture reallocations and ERISA imposes no contrary obligation, the Court should dismiss Count I.

> 2. The Plan's Terms and Peco's Forfeiture Reallocations Do Not Violate ERISA's Fiduciary Duties (Counts II and III).

As previously demonstrated, Peco's reallocations of forfeitures were fully consistent with the terms of the Plan and lawful under ERISA. As a result, Plaintiff cannot state a viable claim for

breaches of the fiduciary duties of prudence and/or loyalty. *See Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) (holding that when fiduciary "complied with the Plan's lawful terms and w[as] under no legal obligation to deviate from those terms," there is no fiduciary breach under ERISA).

*Peco's Forfeiture Reallocations Were Prudent.*

Plaintiff contends that Peco breached its duty of prudence by "fail[ing] to undertake any reasoned and impartial decision-making process to determine whether using the Forfeited Plan Assets to reduce [] Peco's own contribution expenses, as opposed to paying Plan Administrative Expenses or for other purposes allowable under ERISA, was in the best interest of the Plan's participants or was prudent, and failed to solely consider which alternative would promote **the exclusive purpose of providing benefits to Plan Participants** and their beneficiaries **and defraying reasonable expenses** of administering the Plan, in violation of ERISA." Compl. ¶ 115 (emphasis in original).  In other words, Plaintiff claims that using forfeitures for *any* purpose *before* applying them to administrative expenses constitutes a fiduciary breach. But Plaintiff does not allege any facts indicating that Peco followed an imprudent process, and his rigid theory conflicts with a recent ERISA decision by the Supreme Court, which emphasized that courts must consider "the range of reasonable judgments a fiduciary may make." *Hughes v. Northwestern Univ.*, 595 U.S. 170, 177 (2022).

As noted above, Plaintiff's approach is also inconsistent with the well-reasoned decisions issued by a majority of federal courts in the last two years. *See, e.g.*, *Hutchins v. H.P. Inc.*, 737 F. Supp. 3d 851, 862 (N.D. Cal. 2024) (holding that where plan terms comply with ERISA, fiduciary is not authorized to provide benefits beyond what plan provides); *McWashington v. Nordstrom, Inc.*, 2025 WL 1736765, at *15 (W.D. Wash. June 23, 2025) (declining to find breach where

defendants acted in accordance with plan guidelines); *Bozzini v. Ferguson Enters. LLC*, 2025 WL 1547617, at *2 (N.D. Cal. May 29, 2025) (stating that "[m]ore is required to state viable claim for breach of the duty of loyalty" than mere allegation defendant exercised discretion "only for the [p]lan's benefit rather than the benefit of [p]lan participants"); *Naylor v. BAE Sys., Inc.*, 2024 WL 4112322, at *6 (E.D. Va. Sept. 5, 2024) (dismissing fiduciary breach claims regarding forfeitures where defendant adhered to plan's terms).

*Peco's Forfeiture Reallocations Did Not Violate Its Duty of Loyalty*

For similar reasons, Plaintiff's claim for a breach of the duty of loyalty also fails. ERISA's duty of loyalty requires a fiduciary to act "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Plaintiff alleges that Peco breached these duties by "exercising discretion and control over Forfeited Plan Assets and using them to reduce Peco contributions, instead of defraying the reasonable costs of administering the Plan or allocating the Forfeited Plan Assets back to eligible Plan Participants…." Compl. ¶ 107.

But as already shown, Plaintiff has no entitlement to the Plan's forfeitures or to reimbursement for administrative costs. Moreover, Plaintiff ignores the fact that reallocating forfeitures to reduce employer contributions ultimately *benefits* participants—because such reallocations are made through employer contributions to participant accounts, which increase account balances. This is a direct and obvious benefit to participants. Accordingly, Plaintiff cannot state a viable claim for breach of the fiduciary duty of loyalty.

        3.    <u>The Complaint Fails to Allege a Prohibited Transaction (Counts IV and V).</u>

To state a claim for a prohibited transaction, Plaintiff must allege that a party in interest improperly benefitted from a transaction involving the Plan. 29 U.S.C. § 1106(a)(1). However,

Peco's reallocation of forfeitures does not constitute a "transaction" under ERISA. Rather, ERISA's prohibited transaction provisions exempt reallocation because it functions as a benefit payment to Plan participants. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996) (articulating why paying plan benefits falls outside scope of commercial transactions covered by ERISA's prohibited transactions); *Hutchins*, 737 F. Supp. 3d at 868 (holding that forfeiture reallocations were simply means to confer plan benefits and did not constitute transaction under ERISA's prohibited transaction guidelines); *Dimou*, 2024 WL 4508450, at *11 (finding payment of benefits conditioned on performance by plan participants is not harmful and thus is not prohibited); *Buescher v. N. Am. Lighting, Inc.*, 2025 WL 1927503, at *18-19 (C.D. Ill. June 30, 2025) (dismissing prohibited transaction claim because defendants simply moved funds within plan).

The Complaint contains no factual allegations showing that Peco received consideration for personal gain or engaged in any exchange outside the parameters of the Plan. Absent plausible allegations of a prohibited transaction or self-dealing, these claims cannot survive and should be dismissed.

### C.   The Court Should Dismiss the Complaint Under Rule 12(b)(1) Because Plaintiff Lacks Article III Standing.

The Fifth Circuit has consistently held that a class representative must establish Article III standing before class certification can be addressed. *Wilson v. Centene Mgmt. Co.*, 2025 WL 1981287, at *4 (5th Cir. July 17, 2025). *See Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020) ("After all, if the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise.").

To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by

the requested judicial relief." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "There is no ERISA exception to Article III." *Id.* at 547. "[A]t the pleading stage," as the party invoking federal jurisdiction, the plaintiff bears the burden to "clearly … allege facts demonstrating" each of these three elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). These requirements are the "irreducible constitutional minimum" for standing. *Lujan*, 504 U.S. at 560. A failure to meet any one of them requires dismissal.

Here, Plaintiff fails to plausibly allege a concrete and particularized injury-in-fact. The Complaint asserts that Peco used over $4.8 million in forfeitures to reduce its matching contributions to the Plan while using only $52,000 to pay administrative expenses (Compl. ¶¶ 6, 48), and that Plaintiff's account was "charged, and Plaintiff paid, for a share of the Plan's administrative expenses" (Compl. ¶ 13). But critically, Plaintiff does not identify any concrete, particularized harm to his individual account beyond the general observation that all participants incurred administrative fees. Nor does he allege that he was entitled to forfeited assets or to have those expenses paid from a specific source.

This general allegation of harm to the Plan as a whole, without tying it to an individualized loss, is insufficient. The Supreme Court has emphasized that where a plaintiff alleges a breach of fiduciary duty under ERISA but cannot show that he personally suffered a "concrete injury" as a result of that breach, he lacks Article III standing. *Thole*, 590 U.S. at 534.

Plaintiff's assertion that he "paid for a share of Plan administrative expenses" (Compl. ¶ 13) is not enough. He fails to allege the actual amount deducted from his account, whether the fee was unreasonable, or whether that deduction would not have occurred but for the fiduciary conduct alleged. Nor does Plaintiff allege entitlement to a greater benefit under the Plan. *See Thole*, 590

U.S. at 547 (participants who received the benefits to which they were entitled lacked standing to sue for mismanagement of plan assets). Without these specifics, Plaintiff's alleged injury is neither concrete nor particularized.

Moreover, Plaintiff's theory that Peco's decision to use forfeitures to reduce its own contributions somehow harmed him necessarily presumes he had a right to dictate how plan fiduciaries allocated those forfeitures. But he does not allege that he himself forfeited any amounts that Peco allegedly misapplied. His claim rests entirely on speculative assumptions about what might have happened had Peco acted differently.

Plaintiff also seeks relief under 29 U.S.C. § 1132(a)(2), which permits claims for breaches of fiduciary duty that harm the Plan. But even where claims are brought on behalf of the Plan, a participant must still satisfy Article III. This includes alleging an injury that is traceable to the defendant's conduct and redressable by a favorable ruling. The Supreme Court in *Thole* expressly rejected the notion that participants in a defined contribution plan automatically have standing to sue over alleged fiduciary mismanagement of plan assets when they themselves have not suffered a personal financial loss. *Thole*, 590 U.S. at 544.

In short, Plaintiff has failed to allege a particularized injury sufficient to establish standing. The Complaint relies on general allegations about Plan-wide forfeiture allocations, but never identifies how those decisions resulted in actual harm to Plaintiff's individual account. Without such allegations, Plaintiff lacks Article III standing, and the Court should dismiss the Complaint on this basis alone.

## IV.  CONCLUSION

The Court should dismiss Plaintiff's Complaint in its entirety. Each of the five causes of action fails as a matter of law because the Plan expressly permits Peco's use of forfeitures to offset

employer contributions, and such use is consistent with ERISA's statutory framework and five decades of federal regulatory guidance. Plaintiff's attempt to override the Plan's terms finds no support in the statute, regulations, or case law. Moreover, Plaintiff fails to plausibly allege a breach of any fiduciary duty or a prohibited transaction, and he lacks Article III standing because he has not identified a concrete, particularized injury to his own account.

Accordingly, Peco respectfully requests that the Court dismiss the Complaint with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Dated: August 11, 2025.

                                      Respectfully submitted,

                                      **PECO FOODS, INC.**

                                      By:  */s/ Stephen J. Carmody*
                                                 One of Its Attorneys

OF COUNSEL:

Stephen J. Carmody, MSB #8345
scarmody@brunini.com
M. Patrick McDowell, MSB #9746
pmcdowell@brunini.com
R. Richard Cirilli, Jr., MSB #99132
rcirilli@brunini.com
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
Post Office Drawer 119
Jackson, MS  39205
Phone: 601-948-3101

## **CERTIFICATE OF SERVICE**

  I hereby certify that I have electronically filed the foregoing with the Clerk of this Court using the ECF system, which sent notification of such filing to all registered users.

  Dated: August 11, 2025.

                /s/ *Stephen J. Carmody*
                Stephen J. Carmody