**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DISTRICT**

**JAYSON K. BROWN INDIVIDUALLY AND**
**AS A REPRESENTATIVE OF A CLASS**
**OF PARTICIPANTS AND BENEFICIARIES**
**ON BEHALF OF THE PECO FOODS, INC.**
**RETIREMENT SAVINGS PLAN**                                    **PLAINTIFF**

**vs**                                            **CIVIL ACTION NO.: 3:25-CV-491-TSL-RPM**

**PECO FOODS, INC., AND**
**DOES 1 TO 10 INCLUSIVE,**                                    **DEFENDANTS**

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION**</u>

<u>**TO DEFENDANTS' MOTION TO DISMISS**</u>

## I.  <u>INTRODUCTION</u>[1]

This is not a case about whether ERISA plan assets in the form of forfeitures can ever be used to offset an employer's 401(k) matching contribution obligations. It is about what happens when an ERISA fiduciary, entrusted with millions in plan assets, uses those Plan assets to benefit an employer even though the Plan document and ERISA require those assets to *first* be used for the employees' benefit. Plaintiff alleges that Defendants used nearly $5 million in forfeitures to offset Peco's contractual obligations to the Plan, while Plan participants were made to pay nearly $4 million in Plan expenses that never should have come out of their accounts.

The Plan's terms are mandatory: forfeitures "first" must be applied to Plan expenses

---

[1] For clarity and ease, capitalized terms not defined herein shall have the same meaning as in Defendants' Memorandum in Support of Defendants' Motion to Dismiss (ECF No. 11) (hereinafter "Motion").

before any "remaining forfeitures" could be used to offset employer contributions. Defendants ignored this command, violating both the Plan and ERISA's core duties of loyalty and prudence, which the Fifth Circuit has described as "the highest known to the law." *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294 (5th Cir. 2000); *see also Perez v. Bruister*, 823 F.3d 250, 261 (5th Cir. 2016) (affirming breach of the duty of loyalty and explaining that "conflicts of interest must be shunned"). Plaintiff also alleges in detail how the conduct violated ERISA's strict prohibited transaction rules. Just last Term, the Supreme Court in *Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1028 (2025), made clear that at the pleading stage "it suffices for a plaintiff plausibly to allege the three elements" of a § 1106 prohibited transaction claim—"no more, no less." Plaintiff has done exactly that.

At this preliminary stage, Plaintiff's allegations more than satisfy Fifth Circuit pleading standards for ERISA claims. Defendants' effort to cast this case as part of a "wave" of unsuccessful forfeiture litigation is also misplaced. Six district courts across the Eleventh, Ninth, Seventh, and Fourth Circuits have denied motions to dismiss nearly identical claims, including two after Defendants filed their motion to dismiss. *See Stewart v. Nextera Energy, Inc*., 23-81314-CIVCANNON, Dkt. 58, at pp.1, 16 (S.D. Fla. Aug. 14, 2025) (denying motion to dismiss forfeitures claims "following a careful review" of plaintiff's theories and explaining that "[c]ompliance with a plan document does not necessarily mean a fiduciary has discharged its duties with the prudence required under ERISA.")*; Becerra v. Bank of Am. Corp.,* 3:24-cv-921-MOC-DCK, 2025 U.S. Dist. LEXIS 157154 (W.D.N.C. Aug. 12, 2025) (same); *Buescher v. N. Am. Lighting, Inc.,* No. 24-CV-2076, 2025 LX 265829 (C.D. Ill. June 30, 2025) (same); *McManus v. Clorox Co.*, No. 4:23-cv-05325-YGR, 2025 U.S. Dist. LEXIS 43765 (C.D. Cal. Mar. 3, 2025); *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935 (N.D. Cal. 2024); *Perez-Cruet v. Qualcomm Inc.*, No. 23-

cv-1890-BEN, 2024 U.S. Dist. LEXIS 93522 (S.D. Cal. May 24, 2024) (same). The cases cited by defendants granting dismissal did so almost exclusively in the absence of plan violation allegations and relied heavily on one Ninth Circuit decision, *Hutchins v. HP Inc*., 767 F. Supp. 3d 912 (N.D. Cal. 2025), which is now on appeal, and did not involve plan violation claims. Plaintiff's case here presents stronger claims: Defendants disregarded an express plan mandate and directly charged participants' accounts millions in administrative costs while diverting nearly $5 million in forfeitures to Peco.

Moreover, Defendant does not cite a single dismissal from this Circuit. That is likely because, as discussed thoroughly below, the Fifth Circuit has soundly rejected the arguments Defendants assert here in three key decisions. *Bussian*, 223 F.3d at 294 (finding breach of fiduciary duty where surplus plan assets were allocated to the employer rather than the participants); *Perez*, 823 F.3d at 261 (affirming ERISA prohibited transaction violations without a third party out-of-plan "transaction"); *Lee v. Verizon Communs., Inc*., 837 F.3d 523, 545 (5th Cir. 2016) (explaining that participants in defined contribution plans (like 401(k) plans) suffer injuries in fact from fiduciary misconduct that allegedly reduces the value of their retirement benefits). Tellingly, Defendants do not cite to these published, binding Fifth Circuit decisions, which are fatal to their motion to dismiss.

At bottom, this case is about broken fiduciary trust. ERISA grants fiduciaries control over retirement savings but demands that they act solely in the interest of participants and beneficiaries. Defendants instead chose to enrich Peco at the expense of its employees' retirement security. That is exactly the misconduct ERISA was enacted to prevent, and Defendants' motion to dismiss should be denied.

## II. <u>FACTUAL BACKGROUND</u>

Plaintiff Jayson K. Brown, a resident of Mississippi, was previously employed by Peco at their Canton, Mississippi location from 2018 through 2020. Compl. ¶ 12. He was a participant in the Plan during the class period. *Id*. Peco is the Plan's sponsor and Plan administrator with broad authority over the administration and management of the Plan. Compl. ¶ 19; Motion at 2.

The Plan's operating documents provide that assets of the Plan are held in a trust fund "for the ***exclusive*** purpose of providing benefits to Participants under the Plan and their Beneficiaries and defraying reasonable expenses of administering the Plan." *Id*. ¶ 28 (emphasis added); ECF No. 10-1 (the "Plan") at § 3.01, pp. 25.[2]

Plaintiff's retirement account, along with those of the other Plan participants, was charged with an annual share of the Plan's administrative expenses during the class period, and that amount was withdrawn from Plaintiff's account to pay the Plan's third-party administrators. Compl. ¶¶ 12-13, 29-30, 43; Motion 2-3. Plaintiff, like all 401(k) plan participants, has an individual account within the Plan for retirement, the value of which equals (1) the amount of the Plaintiff's voluntary contributions, ***plus*** (2) the amount of Peco's contributions, ***plus*** (3) any investment returns on those contributions, ***minus*** (4) Plan expenses. Compl. ¶ 26 (citing *Cunningham*, 145 S. Ct. at 1025-26).

As described in the Complaint and Motion, during the class period Peco made matching contributions to the Plan's trust fund each year. Compl. ¶¶ 31-35; Motion at 2. All funds deposited in the Plan's trust are assets of the Plan. Compl. ¶ 34; Motion at 2. At the end of each Plan year there are funds in the Plan's trust that at one point were destined for employees of Peco but were forfeited by those employees because they ceased being employees before vesting in those funds. Compl. at ¶ 36; Motion at 3. Those funds are known as "forfeitures."

---

[2] Plaintiff does not object to Defendants' request that the Court consider the Plan's governing documents.

The Plan document, in a standalone sentence, informed Plan Fiduciaries that if there were forfeitures they were to "*first*" use them "to pay administrative expenses." Plan at § 3.05(b), pp 28. In the following sentence, the Plan instructs Plan Fiduciaries that "***Remaining Forfeitures***, **if any**, may then be used to reduce" Peco's contribution obligations. Plan at § 3.05(b), pp 28 (emphasis added); Compl. ¶ 37.

The Plan, like all retirement plans, incurs administrative expenses related to administration, recordkeeping, legal advice, *etc*. Compl. ¶ 29; Motion at 2-3. Substantially all such administrative expenses are paid by the Plan with Plan assets to the Plan's third-party service providers. Compl. ¶¶ 29-30; Motion at 2. Throughout the putative class period, Plaintiff and all participants' accounts have been charged with a portion of those administrative expenses. Compl. ¶¶ 13, 29-30; Motion at 2-3. The deduction of administrative expenses from participant accounts reduced the funds available in the participants individual accounts for investing and, ultimately, reduces the total value of each individual employee's

retirement savings. Compl. ¶ 30.

Although the Plan was established for the exclusive benefit of the participants and ERISA expressly requires fiduciaries to "defray[] reasonable expenses of administering the plan[,]" 29 U.S.C. § 1104(a)(1)(A)(ii), Defendants elected to apply essentially all forfeitures to reduce Peco's matching contribution obligation to the Plan. Compl. ¶¶ 38-49.

Even after applying forfeitures to reduce Peco's matching contributions, Defendants left a balance remaining in the forfeiture account at the end of each year, which it did not use to pay plan expenses (or anything else). *Id*. ¶ 48. While Peco benefited from Defendants use of forfeitures by lowering its contribution requirement, this decision harmed the Plan and participants by (1) decreasing the amount of employer contributions the Plan otherwise would have received, (2)

depriving participants of the money the individual accounts would have increased by had the expenses not been deducted from the accounts; and (3) eliminating any potential investment gains on the forfeitures. *Id*. ¶¶ 68-69, 76.

As the chart below shows, during the putative class period, Defendants provided Peco with **$4,840,500** in forfeiture assets and used only **$52,000** to offset Plan expenses. During the same time period, Plan participants paid at a minimum **$3,905,721** in administrative expenses out of their individual accounts. Compl. at ¶¶ 37-69. And, in each year, Peco was not faced with any financial distress that would have required Defendants to consider the viability of the Plan when determining the use for forfeitures. In fact, instead of covering the Plan's expenses, Defendants did not even use any leftover forfeitures and allowed them to rollover to the next year.

| YEAR | FORFEITURES USED FOR PECO | FORFEITURES USED FOR PLAN ADMIN EXPENSES | EXPENSES CHARGED TO THE PLAN (Direct Compensation) | BALANCE AT YEAR END NOT USED |
|---|---|---|---|---|
| 2019 | $689,600 | $0 | $757,193 | $40,700 |
| 2020 | $772,800 | $0 | $744,790 | $30,400 |
| 2021 | $1,311,900 | $0 | $741,564 | $12,400 |
| 2022 | $1,126,000 | $25,000 | $830,077 | $5,400 |
| 2023 | $940,200 | $27,000 | $832,097 | $39,700 |
| **Total** | **$4,840,500** | **$52,000** | **$3,905,721** | **$128,600** |

Based on the above conduct, which Defendants do not dispute, Plaintiff brought the Complaint on July 7, 2025, individually and as representatives of a class of participants and beneficiaries of the Plan. Compl. ¶ 1. The Complaint asserts five independent counts for relief: (Count 1) Breach of the Duty to Follow Terms of the Plan Document (29 U.S.C. 1104(a)(1)(D)); (Count 2)

Breach of ERISA's Fiduciary Duty of Loyalty (29 U.S.C. 1104(a)(1)(A)); (Count 3) Breach of ERISA's Fiduciary Duty of Prudence (29 U.S.C. 1104(a)(1)(B)); (Count 4) Fiduciary Prohibited Transactions/ Self-Dealing (29 U.S.C. 1106(b)); (Count 5) Fiduciary Prohibited Transactions/ Self-Dealing (29 U.S.C. 1106(a)). *Id.* at ¶¶ 100-131.

### III. <u>LEGAL STANDARD</u>

Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." A complaint "does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible when the plaintiff pleads factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 663. When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

Where a defendant asserts a facial challenge and moves to dismiss for lack of standing pursuant to Rule 12(b)(1), "the court simply considers the sufficiency of the allegations in the complaint because they are presumed to be true." *Lee*, 837 F.3d at 533 (internal quotation marks omitted). A motion to dismiss under Rule 12(b)(1) "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Williams v. Certain Underwriters at Lloyd's of London*, 398 F. App'x 44, 46 (5th Cir. 2010) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

## IV. <u>ERISA AND FIFTH CIRCUIT'S RELEVANT STANDARDS</u>

"The primary purpose of ERISA is to protect participants and beneficiaries of employee retirement plans." *Spence v. Am. Airlines, Inc*., 718 F. Supp. 3rd 612, 617 (N.D. Tex. 2024) (denying motion to dismiss ERISA breach of fiduciary duty claims) (citing *Pilot Life Ins. Co v. Dedeaux*, 481 U.S. 41, 44 (1987)). ERISA ensures its purpose is met by imposing stringent fiduciary duties on plan fiduciaries, including the duty of prudence and duty of loyalty. *Langbecker v. Elec. Data Sys. Corp*., 476 F.3d 299, 307 (5th Cir. 2007). "An ERISA fiduciary must act with prudence, loyalty and disinterestedness, requirements carefully delineated in the statute." *Id*. (citing 29 U.S.C. § 1104(a)). These duties are overlapping but not identical, and the legal standards governing each are described below.

The duty of loyalty requires fiduciaries to act "solely in the interest of the [plan's] participants and beneficiaries," *Cunningham*, 145 S. Ct. at 1025, and "for the exclusive purpose of providing benefits to such participants," *Perez*, 823 F.3d at 261. "A fiduciary with a conflict of interest must act as if he is 'free' of such a conflict. 'Free' is an absolute. There is no balancing of interests; ERISA commands undivided loyalty to the plan participants." *Bedrick v. Travelers Ins. Co*., 93 F.3d 149, 154 (4th Cir. 1996). The Fifth Circuit holds the duty of loyalty up as "the highest known to the law." *Bussian,* 223 F.3d at 294. The Fifth Circuit also makes it clear that fiduciaries "violate their duty of loyalty when they act in the interests of the plan sponsor rather than with an eye single to the interests of the participants and beneficiaries of the plan." *Id*. at 296 (quoting *Reich v. Compton*, 57 F.3d 270, 291 (3d Cir. 1995)).

The duty of prudence "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 419 (2014) (citation omitted); 29 U.S.C. § 1104(a)(1)(B). A fiduciary must act with the

"care, skill, prudence, and diligence that a prudent person acting under similar circumstances would use under the circumstances" and "this duty of prudence trumps the instructions of a plan document . . . even if financial goals demand the contrary." S*ingh v. RadioShack Corp*., 882 F.3d 137, 144 (5th Cir. 2018). The Fifth Circuit explains that the duty of prudence "overlaps the duty of loyalty" and that the "presence of a conflicting interest imposes on fiduciaries the obligation to take precautions to ensure that their duty of loyalty is not compromised." *Bussian,* 223 F.3d at 299. These precautions include undertaking an "intensive and scrupulous independent investigation of the [fiduciary's] options." *Id*.

To state a claim for breach of a fiduciary duty under ERISA, a plaintiff must allege, or set forth facts from which the court could reasonably infer, that: (1) the plan is governed by ERISA, (2) the defendant is a fiduciary of the plan, and (3) the defendant breached its fiduciary duties under ERISA, resulting in losses to the plan's participants. *Seidner v. KimberlyClark Corp*., No. 3:21-CV-867-L, 2023 U.S. Dist. LEXIS 54780, *15 (N.D. Tex. Mar. 30, 2023)(denying 12(b)(1) and 12(b)(6) motion to dismiss ERISA breach of fiduciary duty claims); *Blackmon v. Zachary Holdings, Inc*., No. 5:20-CV-988-DAE, 2021 U.S. Dist. LEXIS 88219, *8 (W.D. Tex. Apr. 22, 2021) (denying 12(b)(6) motion to dismiss ERISA breach of fiduciary duty claims).

In an effort to further protect plan participants and beneficiaries, Congress enacted additional statutory safeguards on top of ERISA's common-law based fiduciary duties. ERISA "Section 1106 supplements [a] fiduciary's general duty of loyalty to the plan's beneficiaries . . . by categorically barring certain transactions deemed 'likely to injure the pension plan." *Cunningham*, 145 S. Ct. at 1025. Section 1106(a)(1)(A) prohibits plan fiduciaries from causing the plan to engage in "a transaction" in which property is "exchange[d]" between the plan and a "party in interest" or "assets of the plan" are "use[d] by or for the benefit of a party in interest." Section

1106(b)(1) prohibits a plan fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account."

Because ERISA prohibited transactions are categorically barred, "plaintiffs need only plausibly allege each of those elements of a prohibited-transaction claim" to survive dismissal. *Cunningham*, 145 S. Ct. at 1027. In *Cunningham*, the Supreme Court recently overturned a Second Circuit decision dismissing a prohibited transaction claim at the 12(b)(6) stage because "it suffices for a plaintiff plausible to allege the three elements set forth in 1106(a)(1)(C) . . . no more, no less." *Id*. at 1028, 1032.

## V. <u>ARGUMENT</u>

### I.    Plaintiff and the Class Have Standing to Bring All of Their Forfeiture Claims.

Defendants' motion to dismiss for lack of Article III standing suffers a fatal flaw. It almost exclusively relies on the Supreme Court's decision in *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020). Motion 13-15. In *Thole*, the Supreme Court addressed standing in the context of a defined benefit plan where participants' benefits are fixed and do not depend on investment performance and the reduction of investment performance based on expenses. *Id*. at 540. The Fifth Circuit has clearly explained this difference in addressing Article III standing: "[a] defined-contribution plan presents a starkly different circumstance than a defined-benefit plan, which as its name implies, is one where the employee, upon retirement, is entitled to a fixed periodic payment." *Lee*, 837 F.3d at 545; *Thole*, 590 U.S. at 540 ("Of decisive importance to this case, the plaintiffs' retirement plan is a defined-benefit plan, not a defined-contribution plan.").

In *Lee*, the Fifth Circuit explained the Supreme Court's actual holding for defined contribution plan standing: "as the Supreme Court explained in *LaRue v. DeWolff, Boberg & Assocs.*, [f]or defined contribution plans . . . fiduciary misconduct need not threaten the solvency of the

10

entire plan to reduce benefits below the amount that participants would otherwise receive. As a result, other circuit courts have held that participants in defined-contribution plans had redressable, Article III standing because alleged fiduciary breaches had a direct effect on the amount of benefits." *Lee,* 837 F.3d at 545.

Plaintiff has alleged that he was a Plan participant during the class period, that his individual account, and the individual accounts of each class member, had millions of dollars removed for Plan expenses that should not have been removed, and that this conduct caused the value of his individual account to be less than it otherwise would be. Compl. ¶¶ 12-14, 30, 37-48. Plaintiff alleges that it was not reasonable to take any of the money out of his account or that of the class because the Plan required that forfeitures be used to offset those expenses first. *Id*. ¶¶ 50-69. These allegations must be accepted as true for standing purposes. *Lee,* 837 F.3d at 533. In fact, Defendants do not deny the allegations, they only argue that Plaintiff should be even clearer than he is on how much was taken for Peco's benefit. Motion 14. This is not what is required by the law and Defendants' inability to cite any ERISA forfeiture decisions that say the same, even though they cite numerous ERISA forfeiture decisions throughout their Motion is telling. In fact, the very forfeiture cases Defendants rely on in their Motion rejected Rule 12(b)(1) challenges based on substantially similar arguments. *See e.g., Dimou v. Thermo Dimou v. Thermo Fisher Sci. Inc*., U.S. Dist. LEXIS 188394, *7-8 (S.D. Cal. Sept. 19, 2024) ("Plaintiff asserts that when the Fiduciary Defendants failed to use the forfeitures to defray the administrative expenses, the expenses got charged to the Plan participants' accounts, resulting in a proportional reduction in Plaintiff's account. Accordingly, the Court concludes that Plaintiff suffered a concrete and particularized injury traceable to the Fiduciary Defendants' conduct.") (internal citations omitted). As the Supreme Court explained and the Complaint alleges, a defined contribution participant's

retirement value is dependent on investment growth that is directly reduced by expenses. *Cunningham*, 145 S. Ct. at 1026; Compl. ¶ 26, 30, 69, 130.

Plaintiff has alleged injuries in fact in a defined contribution plan. Therefore, Defendants' Rule 12(b)(1) motion should be denied.

## II.   Plaintiff Sufficiently Alleged a Breach of the Plan Document

### A. The Plan Violation Claim Satisfies Pleading Requirements

The Complaint alleges that the Plan is a contract, that Defendants breached the Plan's forfeiture provisions by using the forfeitures for Peco's benefit before first using them to fully offset the Plan's administrative expenses, and that this breach caused Plaintiff and the class millions of dollars in damages. Compl. ¶¶ 100-105. Plaintiff supported his breach of contract claim with numerous detailed factual allegations and a separate independent count. *Id.* at ¶¶ 37-39, 50-69, 100-105.

Under Mississippi contract law, that is all Plaintiff is required to plead to survive a motion to dismiss. *See Reeves v. AV Nail Spa Ridgeland*, Inc., No. 3:22-CV-00042-KHJ-MTP, 2022 U.S. Dist. LEXIS 145153, at *17-18 (S.D. Miss. Aug. 15, 2022) ("To state a claim for breach of contract, a party must allege a valid and binding contract existed and defendant breached the contract.") (citing to *Bus. Commc'n, Inc. v. Banks*, 90 So.3d 1221, 1224-25 (Miss. 2012)).

As discussed below, each of Defendants' arguments to the contrary fail and the Motion should be denied with respect to the Plan violation claim.

### B. Defendants' Interpretation Violates the Plan's Purpose

The Motion should be denied with respect to the Plan violation claim. Fifth Circuit law requires courts to give effect to the ordinary and popular meaning of unambiguous plan terms, to

12

prioritize specific terms over general ones, and to avoid interpretations that nullify or render plan provisions illusory. *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 260 (5th Cir. 2009) ("ERISA plans are interpreted in their ordinary and popular sense as would a person of average intelligence and experience."). Under Mississippi contract law, "every contract contains an implied covenant of good faith and fair dealing in performance and enforcement." *Blue Diamond v. Liberty Mut. Ins. Co*., 21 F. Supp. 2d 631, 633 (S.D. Miss. 1998).

Defendants argue that under the Plan's forfeiture provisions, the fiduciaries can use the forfeitures to benefit Peco even if the forfeitures were sufficient to cover all of the Plan's administrative expenses. Motion at 6. Defendants also frame their argument to suggest Plaintiff is imposing a mandatory duty that doesn't exist by allegedly forcing the Plan to maximize participant benefits. Motion at 8-9. This was never alleged by Plaintiff. Defendants' interpretation of the forfeiture provision would allow the Plan fiduciaries to use the forfeitures to benefit Peco before being used to fully benefit the Plan's participants. The Plan's purpose is crystal clear – it was established "for the exclusive purpose of providing benefits to Participants under the Plan and their Beneficiaries and defraying reasonable expenses of administering the Plan." *See supra* at pp. 3.

Defendants' interpretation transforms Peco into the "exclusive" beneficiary of the Plan and relegates the Plan participants to a secondary beneficiary of the Plan. Plaintiff's interpretation, on the other hand, leaves Plan participants in their rightful place as the exclusive beneficiaries. This is consistent with both the Plan's purpose and ERISA, which requires that fiduciaries act "solely in the interest of the [plan's] participants and beneficiaries . . . so as to ensure that a plan receives all funds to which it is entitled." *Cunningham*, 145 S. Ct. at 1025.

### C. Defendants' Interpretation Is Not Reasonable

The terms of an ERISA plan should be interpreted in an "ordinary and popular sense as would a person of average intelligence and experience." *Stone*, 570 F.3d at 260. The Plan's forfeiture provision could not be any clearer. It provides that Plan fiduciaries were required to "first" use Forfeited Plan Assets "to pay administrative expenses." And only if there were "remaining forfeitures" could they be used to reduce Peco's contribution obligations. *See* Plan at § 3.05(b), pp 28 (emphasis added); Compl. ¶ 37. Any reasonable person of average intelligence would understand that fiduciaries were required to first exhaust the forfeitures for the purpose listed, to pay administrative expenses, and then use any forfeitures not used for Peco, *i.e.*, what was left over after covering Plan's expenses. This makes intuitive sense, aligns with the Plan's purpose and ERISA, and is sufficient to state a claim at this stage.

Defendants present a jigsaw interpretation that disregards that administrative expenses are listed first in a standalone sentence and ignores the key term "Remaining forfeitures, if any, may then be used to reduce Employer Contributions." Motion at 8.[3]

### D. Defendants' Reading Nullifies the Forfeiture Provision

Defendants' interpretation would also violate the principle that, "Contracts should be interpreted to give effect to all the provisions of the contract so that none will be rendered meaningless." *Hill v. Washburne*, 949 F.3d 216, 228 (5th Cir. 2020); *Enniss Family Realty I, LLC v. Schneider Nat'l Carriers, Inc.*, 916 F. Supp. 2d 702, 708 (S.D. Miss. 2013) ("The court should read the contract as a whole, so as to give effect to all of its clauses."). Defendants ask the Court to

---

[3] Plaintiff agrees that "may" generally suggests permissive language. Motion at 8, 9. Once Defendants chose to use the forfeitures for plan administrative expenses, as they concede they did each year, "[r]emaining forfeitures, if any, may then be used" for Peco's benefit. Plaintiff alleges Defendants did the opposite; they used $4.8 million in forfeitures for Peco *before* covering plan administrative expenses.

essentially ignore any portion of the forfeiture provision that requires them to use the forfeitures for the benefit of participants.

A recent decision involving nearly identical plan violation claims, brought by the U.S. Department of Labor, based on the failure to use plan forfeitures for participants' benefit is particularly instructive on this point. In *Walsh v. Allen*, plaintiff alleged that the plan document required that plan forfeitures be used for participants benefit "prior" to being used for employer contributions and "if there are any unused forfeitures" they will be used for other purposes. No. 3:17-cv-784, 2022 U.S. Dist. LEXIS 14036, at *9 (W.D. Ky. Jan. 26, 2022). In rejecting similar arguments made by Defendants here—at the summary judgment stage following discovery—the court explained that defendants' argument would render portions of the forfeiture provision meaningless because the plan there required that forfeitures "be used to pay plan expenses '[p]rior to applying forfeitures under this AA § 8-8." *Id.* at *11. The Court expressed its frustration in defendants' interpretation and asked a series of rhetorical questions in the decision: "What would be the purpose of sequencing these uses if the employer retained discretion to do either? Why have a forfeiture provision at all, if the employer still can do whatever it wants with these sums?" *Id*. at **11-12.

As in *Walsh*, Defendants' interpretation would render most of the forfeiture provision irrelevant. As discussed above, it would require that key sections of the provision be ignored. Additionally, it would ignore the clear sequencing provided in the Plan requiring forfeitures be used first for the Plan's administrative expenses and only then that any remaining be used for Peco's contribution obligation.

In another recent forfeiture case, the district court denied a motion to dismiss based on similar language because the: "the Plan sets forth a mandatory priority for how forfeitures are to

be allocated: first, to restore previously forfeited amounts pursuant to Section 5.03 (not relevant here); second, to "reduce Plan administrative expenses"; and third, any remaining funds are used to reduce Company Contributions." *Stewart v. Nextera Energy, Inc.,* 23-81314-CIVCANNON, Dkt. 58, at 12. That is substantially the same language at issue in this case.

### E. Any Ambiguity Must Be Construed Against Defendants

If the Court finds that the forfeiture provisions are ambiguous, Mississippi contract law requires that the ambiguous terms be construed against the drafter, as it is the drafter's responsibility to clearly state the terms of the agreement. *N. Miss. Med. Ctr., Inc. v. Quartiz Techs.*, No. 23-60483, 2025 U.S. App. LEXIS 1908, at *11 n.31 (5th Cir. Jan. 28, 2025) (citing to *Miss. Transp. Comm'n v. Ronald Adams Contractor, Inc.*, 753 So. 2d 1077 at 1085) (applying both the canon of contract construction that ambiguities in a contract are to be construed against the party who drafted the contract, and the doctrine that specific provisions override more general language to interpret an ambiguous contract); *Cooper Tire & Rubber Co. v. Farese*, 248 F. App'x 555, 560 (5th Cir. 2007) ("Where the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party").

Additionally, under Fifth Circuit law if an ERISA plan is ambiguous, "the determination of the parties' intent becomes a question of fact and extrinsic evidence of intent may be introduced" and examined by the Court. *Jackson v. Transamerica Occidental Life Ins. Co*., No. 96-60620, 1998 U.S. App. LEXIS 38887, at *9 (5th Cir. July 1, 1998) ("Under the rule of contra proferentum, courts must construe plan terms in favor of the insured when such terms remain ambiguous after ordinary principles of contract interpretation have been applied.")

### III. Plaintiff has Plausibly Alleged a Breach of Fiduciary Duty

Plaintiff alleges that Defendants are fiduciaries of the Plan, that they breached the twin ERISA fiduciary duties of loyalty and prudence when they chose to use forfeitures almost exclusively for Peco's benefit instead of for the benefit of Plaintiff and the Plan's participants,

and that this action caused millions of dollars in damages to Plaintiff and the class. *See* Compl. ¶¶ 6-7, 38-69.  No more is required at this stage in the litigation.

### A. Plaintiff Plausibly Alleges a Breach of the Duty of Loyalty

The duty of loyalty requires plan fiduciaries to act solely in the interest of the employees, participants, and their beneficiaries.  In dealing with the Plan forfeitures, the Defendants utterly failed to live up to this standard, placing Peco's interests above Plan participants in using forfeitures for Peco's benefit instead. There is no dispute that Defendants could have used the forfeiture assets to cover the entire amount of Plan expenses, just under $4 million, to benefit Plan participants and that there is no rule of the Plan or ERISA that prevented the Defendants from doing so. The Plan fiduciaries "exercised discretion over, and control of, Plan assets and consistently and reflexively chose to use the [forfeitures] for their own exclusive interest, to the detriment of the Plan and participants, by allocating [forfeitures] toward reducing Peco's contributions to the Plan while enabling Peco to maintain its discretionary contributions as an employee benefit." Compl. ¶ 68. Plaintiff also details, in dozens of paragraphs, how and when Defendants used the forfeitures for Peco and did not use them for Plan participants. *Id*. at ¶¶ 38-69.

The Fifth Circuit decision in *Bussian* clearly instructs that this kind of behavior is a breach of the duty of loyalty. There, the Fifth Circuit reversed summary judgment for defendants on Plaintiff's duty of loyalty and prudence claims. The *Bussian* plaintiffs alleged that defendants violated ERISA's fiduciary duties when the employer recouped surplus assets from the plan rather than use them for the participants' benefit. *Bussian*, 223 F.3d at 296. Defendants argued that, because the text of the plan allowed the employer to recoup surplus assets and because ERISA did not categorically prohibit such recoupment, its actions could not constitute a breach of ERISA fiduciary duties. The Fifth Circuit rejected this argument full stop: "simply because ERISA allows an employer to recoup surplus assets does not mean that a fiduciary's acts undertaken to implement a plan's termination may deviate from ERISA's command that a 'fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants

and beneficiaries.'" *Id.* at 295 (citing 29 U.S.C. § 1104(a)(1)). The Fifth Circuit went on to explain that if the steps taken to recoup the surplus led to the "direct result of reducing benefits [it] would be a violation of ERISA's command." *Id.* at 296. The Court ultimately found that "a reasonable factfinder could conclude that [the employer] placed its interests in the reversion ahead of the beneficiaries' interests in full and timely payment of their benefits." *Id.* at 306. The "recoupment" of surplus assets in *Bussian* is effectively indistinguishable from the Plan fiduciaries' usage of forfeiture assets here. In both circumstances, the fiduciary duty of loyalty requires fiduciaries to use those funds for the participants' benefit before diverting them to the employer, not after (or, as is also true here, simply letting them go unused).

In short, *Bussian* controls this motion and Defendants' citations to out-of-state district court decisions are unavailing. Nevertheless, Defendants' purported defense of their disloyal use of plan forfeitures has been rejected other district courts across. *See e.g., Perez-Cruet,* 2024 U.S. Dist. LEXIS 93522, at *2 (denying motion to dismiss duty of loyalty claims where plaintiffs alleged that defendants breach the duty of loyalty by "choosing to use forfeited funds to reduce its own future contributions to the Plan instead of reducing the administrative expenses which are borne by participants."); *McManus*, 2025 U.S. Dist. LEXIS 43765, at *8 ("Plaintiff's argument that defendants were motivated solely by self-interest and conducted no reasoned and impartial decision-making process is plausible given that no other justification is readily apparent."); *Rodriguez*, 744 F. Supp. 3d at 944 ("The allegations in the complaint plausibly suggest that Intuit breached its duty of loyalty by making decisions that were not in the best interest of Plan participants.").

To be sure, as Defendants cite in their Motion, other district courts (also outside of this Circuit) that have granted motions to dismiss forfeiture cases. *See* Motion at 7-8. These decisions cannot be squared with the Fifth Circuit's decision in *Bussian* and therefore have little persuasive weight. Regardless, in none of the cases cited by Defendants were there allegations that the fiduciaries simply chose *not to use* available forfeitures for almost the entirety of the class period to offset plan expenses when they could have covered all of the expenses with forfeitures.

Defendants' conduct here is truly an outlier of disloyal conduct. Furthermore, as one recent district court explained, the very fact that courts can differ strongly supports denying dismissal of these claims. *See Becerra*, 2025 U.S. Dist. LEXIS 157154, at *8-9 ("The claims and arguments made by both parties involve questions about how to interpret the Plan, and courts have come to different conclusions as to when there is a fiduciary duty under ERISA and what constitutes a breach. At this stage, Plaintiff has stated sufficient facts to support the claim that Defendants were exercising discretion as fiduciaries. Moreover, Plaintiff has sufficiently stated a claim that Defendants breached their fiduciary duties by using Plan assets to lower new employer contributions.").

Simply put, there is no plausible reasonable explanation that would lead a loyal fiduciary to use forfeited Plan assets to reduce employer contributions when the forfeited Plan assets could be used to defray reasonable Plan expenses and the employer had more than enough resources to cover its own contractual obligations to the Plan. The only plausible inference at this stage is that the fiduciaries were acting disloyally due to the conflict of interest between the employer and the Plan and its participants and beneficiaries.

Finally, because liability turns in part on Defendants' "state of mind" when making their forfeiture allocation decisions, this claim cannot be resolved on a motion to dismiss. *Brotherston v. Putnam Invs*., LLC, 907 F.3d 17, 40 (1st Cir. 2018) ("[T]o be loyal is to possess a certain state of mind" and thus a claim as to an ERISA fiduciary's duty of loyalty focuses on 'motive'"). Thus, Plaintiff must be entitled to discovery regarding Defendants' decision-making process in order to traverse whether they knowingly and intentionally breached their duty of loyalty by taking Peco's interests into account in preference to Plaintiff and the other class members.

### B. Plaintiff Plausibly Alleges a Breach of the Duty of Prudence

As discussed above, Defendants were conflicted at all times with respect to its decisions regarding the use of forfeitures, and therefore its actions must be "intensive[ly] and scrupulous[ly]" reviewed to determine if the Defendants violated ERISA's duty of prudence. *Bussian*, 223 F.3d at 299.

19

Here, Plaintiff alleges that "[i]n deciding how to allocate forfeitures, Defendants utilized an imprudent and flawed process," Compl. ¶ 115, and that there "are no facts or circumstances throughout the class period that make discretionary decisions to use [forfeitures] to reduce Peco's contributions consistent with discharging the Plan Fiduciaries' duties with respect to the Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan" *Id.* at ¶ 67. Again, *Bussian* is instructive. Even after full discovery, the Fifth Circuit found that it was "inappropriate for the district court to grant summary judgment" because "a reasonable fact finder could conclude that [the fiduciaries] failed to structure, let alone conduct, a thorough impartial investigation . . . ." *Bussian*, 223 F.3d at 302-303. Plaintiff must be allowed discovery to determine whether Defendants' internal decision-making process was "thorough" and "impartial" as required by law.

Additionally, the very cases Defendants rely on tells us that an allegation of "a failure to fulfill the ERISA plan terms," as Plaintiff has asserted, would likely be sufficient "to move the needle on [plaintiff's] claim[s] from 'speculative' to 'plausible.'" *Hutchins v. HP Inc.*, 2025 U.S. Dist. LEXIS 21095 at *18 (N.D. Cal. Feb. 5, 2025); *see also Sievert v. Knight-Swift Transp. Holdings, Inc.*, 2025 U.S. Dist. LEXIS 81759 (D. Ariz. Apr. 29, 2025) (granting motion to dismiss forfeiture case where plaintiffs did not allege a plan violation but instead a violation of the Form 5500 filings). The cases denying motions to dismiss support the same conclusion. *See Stewart v. NextEra Energy, Inc.*, Case No. 23-81314, Dkt. 58 at 16 (S.D. Fla. Aug. 14, 2025) (denying motion to dismiss plaintiffs' allegation that plan fiduciaries' conduct was imprudent because it was in violation of the plan terms and explaining "[s]imply put, it is far from clear that the Court is dealing with a situation where the 'only reasonable interpretation' of the Plan is the interpretation advanced by Defendant.").

Notably, Defendants have not proffered any explanation for *why* Defendants chose to give nearly $5 million to Peco while forcing Plan participants to pay nearly $4 million in Plan expenses it could have fully covered, so that Plaintiff could assess whether that justification

complied with their fiduciary duties.  In all likelihood, there is no such explanation, which is why Defendants are so eager to have this claim dismissed before they are called upon to justify the manner in which they spent these millions of dollars in Plan assets. Even if Defendants were to belatedly provide such an explanation on reply, at this stage in the litigation that would simply create a disputed issue of fact requiring discovery.

### IV. Defendants' Implausibility Arguments are Meritless.

Defendants' key arguments in favor of dismissal fail for the simple reason that they are either contrary to Fifth Circuit precedent, are factually incorrect characterizations of the Complaint, or have been rejected by other courts.

### A.  Plaintiff's Claims Are Not Barred Simply Because ERISA Allows Fiduciaries To Use Forfeitures In Some Circumstances

Defendants argue that they are free to violate ERISA's duty of loyalty and prudence because ERISA does not explicitly prohibit the use of forfeitures to offset employer matching contribution obligations and it is consistent with fifty years of federal regulations. Motion at 2.

As discussed above, the Fifth Circuit has long rejected this argument explaining in no uncertain terms that "simply because ERISA allows an employer" to use Plan assets "does not mean that a fiduciary's acts undertaken to implement [the transaction] may deviate from ERISA's command that a 'fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.'" *Bussian*, 223 F.3d at 295. Additionally, as explained by Judge Aileen M. Cannon in denying the dismissal of a similar forfeiture claim: "Compliance with a plan document does not necessarily mean a fiduciary has discharged its duties with the prudence required under ERISA. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014). Plaintiff's forfeiture claim may proceed to discovery." *Stewart v. NextEra Energy, Inc*., Case No. 23-81314, Dkt. 58 at 16 (S.D. Fla. Aug. 14, 2025).

Furthermore, Plaintiff's allegations do not sweep so broadly. The Tax Code and the Treasury regulations are concerned with a plan's design, not fiduciary decision making. The law permits a plan sponsor to design a plan which provides that forfeitures can be used to reduce

employer contributions in appropriate circumstances. Plaintiff does not contend that ERISA would categorically prohibit a plan designed to use forfeitures for that purpose in some circumstances. However, the mere fact that ERISA generally allows certain actions, in the appropriate circumstances, says nothing about whether these particular Defendants satisfied their fiduciary duties in these particular circumstances. As one court noted in rejecting similar arguments, "[t]hat Treasury regulations and DOL Guidance would generally permit employers to structure plans to allow forfeitures to cover contributions does not establish that [defendant's] implementation by using forfeitures to offset its mandatory Matching Contributions within the parameters of this specific Plan . . . was permissible, lawful, or inconsistent with a finding that [defendant] violated ERISA . . . ." *Rodriguez*, 744 F. Supp. 3d at 947. In other words, there is no "settled law" that would allow Defendants to use forfeitures to reduce Peco's contribution obligation when participants would be better served by the Plan fiduciaries' using forfeitures to pay Plan expenses that increase the value of Plan participants' accounts. Safeguarding those accounts is the sole purpose of the Plan and the singular duty of an ERISA fiduciary. Plaintiff has therefore adequately pleaded a breach of fiduciary duty under the facts of this case, and there is no reason for the Court to address or consider whether other, hypothetical, circumstances might exist that could justify a similar decision in a different case

Moreover, the Department of Labor, the primary agency tasked with enforcing ERISA fiduciary duties, led the way by filing the first forfeitures case. In 2017, the DOL filed a lawsuit against 401(k) plan fiduciaries for "us[ing] plan assets in the forfeiture account to reduce the amount [the employer] had to pay towards its declared employer matching contribution, instead of using these plan assets to pay expenses of the 401(k) plans." *Pizzella v. Allen*, No. 3:17-CV-784-JRW-CHL, 2020 U.S. Dist. LEXIS 255207, at *4 (W.D. Ky. May 13, 2020). In that litigation, which spanned multiple democratic and republican administrations and three Secretaries of Labor, the DOL firmly asserted that such conduct violated the plan fiduciaries duty to "act . . . for the exclusive interest of plan participants" and constituted prohibited transactions. *See Acosta v. Allen et al.,* No. 3:17-cv-784-CHB, ECF No. 39-4 at 11 (W.D. Ky. Jan. 22, 2024).

Ultimately, the DOL obtained a consent order that required the plan sponsor to pay "$575,000 to the retirement accounts of the affected participants." *Julie A. Su v. Allen et al.*, No. 3:17-cv-784-BJB, 2023 U.S. Dist. LEXIS 174013, at *2 (W.D. Ky. Sep. 28, 2023).

### B.  Plaintiff Does Not Seek Benefits He Is Not Entitled To

Defendants next argue that the Plan's fiduciaries were under no obligation to choose the best forfeiture allocation option for participants because ERISA fiduciary duties only require a fiduciary to protect the benefits of a participants and therefore using forfeitures to offset Plan expenses would give Plaintiff a new benefit. Motion at 6-7. Defendants' argument fails for several reasons.

*First,* as discussed above, the Plan at issue here is not a defined benefit plan. The Plan here is a defined contribution plan where participants "maintain individual investment accounts within those plans, the value of which is determined by the market performance of employee and employer contributions, less expenses." *Cunningham*, 145 S. Ct. at 1026; *see also LaRue,* 552 U.S. at 262 (Justice Thomas, *concurrence*) (explaining that 29 U.S.C. § 1002(34)) defines a "defined contribution  plan as [a] plan which provides  for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account"). As discussed above, one of the primary duties of an ERISA fiduciary is to "defray[] reasonable expenses of administering the plan[,]". 29 U.S.C. § 1104(a)(1)(A). This is especially true for a fiduciary of a defined contribution plan as the value of the participants' retirement accounts are reduced by expenses.[4]  In other words, the effective result of Defendants' conduct was to cause Plaintiff's 401(k) individual account to be reduced below what it should have been and to forgo future investment returns on the amounts

---

[4] Even in the defined benefit plan context, where plaintiffs are receiving all of their fixed benefits, the Fifth Circuit has held that if fiduciaries used their discretion to benefit the employer in a way that resulted in the reducing of benefits, already being paid to plaintiffs, it would "be a violation of ERISA's commands." *Bussian* at 295-96.

taken from their accounts. Compl. ¶¶ 26, 124, 130. Plaintiff is not asking for anything "extra" above what a defined contribution plan participant is entitled to.

*Second,* Defendants are wrong. The Supreme Court has clearly held that ERISA fiduciaries must manage the plan to "maximize retirement savings for participants." *Fifth Third Bancorp*, 573 U.S. at 420. The text and structure of ERISA mandates that fiduciaries must act solely in the interest of Plan "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; *and* (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104 (a)(1)(A) (emphasis added). Congress did not give fiduciaries the option, as Defendants argue in the Motion, to provide benefits to the Plan participants but *not* defray expenses. Defendants concede in their Motion that Defendants provided benefits to the Plan participants but *did not* use forfeitures to defray the administrative expenses as required by ERISA. As *Cunningham* instructs, a motion to dismiss "cannot overcome the statutory text and structure" of ERISA. *Cunningham*, 145 S. Ct. at 1031.

*Lastly*, the idea that Plaintiff and the class and not Peco receive a windfall through the fiduciaries' actions is just wrong. The limited record shows a fiduciary committee systematically diverting plan assets to benefit the employer while saddling participants with costs that ERISA fiduciary duties require be minimized or eliminated. That is the opposite of loyalty, the opposite of prudence — and the very misconduct ERISA was enacted to prevent.

## V.  Plaintiff Plausibly Alleges Prohibited Transactions

Defendants' use of Plan assets for Peco's benefit violates at least two ERISA provisions concerning prohibited transactions. Section 1106(a)(1)(A) prohibits plan fiduciaries from causing the plan to engage in "a transaction" in which property is "exchange[d]" between the plan and a "party in interest" or "assets of the plan" are "use[d] by or for the benefit of a party in interest." Section 1106(b)(1) prohibits a plan fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account."

As to Section 1106(a)(1)(A), Plaintiff alleges that by electing to use forfeited funds in the Plan as a substitute for its required contributions to the Plan, the Plan fiduciaries, acting in a

fiduciary capacity, caused the Plan to engage in transactions that constituted a direct or indirect exchange of existing Plan assets for future employer contributions and/or a use of Plan assets by or for the benefit of Peco. Compl. at ¶¶ 126-131. As to § 1106(b), Plaintiff alleges that Plan fiduciaries used its power to deal with the Plan's assets for Peco's benefit or account by using forfeitures to reduce company contributions. *Id*. at ¶¶ 120-125.

Defendants do not dispute that (1) Peco, as the "employer" of Plan participants and the Plan sponsor, is a "party in interest," *see* 29 U.S.C. § 1002(14)(C); (2) the forfeitures are "Plan assets," and (3) Defendants were acting as "fiduciaries" when deciding how to use the forfeitures in the Plan.  Defendants argue only that the use of Plan assets to offset Peco's contribution debt does not qualify as a "transaction" because the forfeitures stay in the Plan. Motion at 12-13.

To begin, Defendants' argument ignores the Complaint's detailed allegations on how the forfeitures are allocated in the Plan and how the participants individual accounts are reduced in third-party transactions. Compl. ¶¶ 70-90. When the forfeitures are used to benefit Peco, they appear on the Plan's trust account statement as transactions that inure to Peco. Additionally, when the forfeitures are placed into the Plan participants accounts as Peco matching contributions they are recorded as plan level transactions and in this case that would mean thousands of plan level transactions per year. *Id.* Next, the fiduciaries remove money directly from the participants' accounts and send it to the Plan's third-party administrator to cover the cost of plan expenses that should have been covered by the Plan's forfeitures. Compl. ¶¶ 13, 29-30. Discovery will show this to be true but, at this stage, Plaintiff simply does not have the information needed and for this reason Plaintiff should be allowed discovery. *Sacerdote v. N.Y. Univ.,* 9 F.4th 95, 107 (2d Cir. 2021) ("[W]e are cognizant that ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences.") (internal quotation omitted).

More fundamentally, it is not necessary for assets to actually leave a plan to qualify as a "prohibited transaction". Fifth Circuit precedent concurs. In *Perez v. Bruister*, the Fifth Circuit upheld prohibited transaction findings where fiduciaries used Plan assets to purchase employer

25

stock from the company's owner. 823 F.3d at 255-57. The "transaction" was made up of two components (1) cash from the plan and (2) notes issued from the Plan. *Id*. at 271. Later, "the original note from the [Plan] to the [Employer] was cancelled", *i.e*., no money left the plan but a debt was incurred and then cancelled. *Id*. In explaining one of the transactions, the Fifth Circuit stated clearly the harm even when no money leaves the plan: "Take as an example the December 2005 transaction, which was 100% debt-financed. The harm to the ESOP is that it overpaid for the BAI stock. It incurred too much debt." *Id*. at 274. The Fifth Circuit had no difficulty finding violations of § 1106(a) and (b) based on how plan assets were impacted, not whether they exited the plan, and affirmed judgment on behalf of plaintiffs. The same principle applies here: using plan forfeitures to relieve Peco of its funding obligation is functionally identical to Bruister's sale of overvalued shares — both amount to a use of plan assets for the benefit of a party in interest and trigger § 1106. Other courts have reached similar conclusions. *See e.g*., *Randall v. GreatBanc Trust Co*., No. 22-cv-2354, 2024 U.S. Dist. LEXIS 29208, at *13-14 (D. Minn. Feb. 21, 2024) (denying motion to dismiss prohibited transaction claims based on inter plan and employer transactions where company stock was released by the plan "for employer contributions").

Additionally, the Supreme Court has recognized that a fiduciary who fails to "assur[e] full and prompt collection of contributions" – as Defendants allegedly did here by impermissibly using forfeitures as a substitute for contributions – may "be found to have violated" ERISA's prohibited transactions. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc*., 472 U.S. 559, 572-74 (1985) (emphasis added); *see also Commissioner v. Keystone Consolidated Industries, Inc*., 508 U.S. 152, 159 (1993) (finding a similar arrangement to be a "transaction" and explaining "[t]he contribution of property in satisfaction of a funding obligation is at least both an indirect type of sale and a form of exchange, since the property is exchanged for

diminution of the employer's funding obligation"). The DOL has reached the same conclusion and in public filings has urged federal courts that when defendants use "plan assets held in the forfeiture account to reduce the amount [the employer] had to pay towards its declared matching contribution . . . . they cause[] a direct financial benefit to [the employer] by lowering the amount [it] had to pay in employer matching contributions." *See Acosta v. Allen et al.,* No. 3:17-cv-784-CHB, ECF No. 39-4 at 23 (W.D. Ky. Jan. 22, 2024). As such, defendants caused the plan "to engage in a transaction" that violates Section 1106. *Id*.

In any event, the Supreme Court's decision in *Cunningham v. Cornell*, issued just this year and not cited once in the Motion, forecloses Defendants' arguments for dismissing prohibited transaction claims at this early stage, and, as a practical matter, overturns the decisions relied upon therein. In overturning the Second Circuit's dismissal of § 1106-prohibited transaction claims where the Plan's fiduciaries used plan assets to pay third-party administrators for plan expenses, the Supreme Court wrote "[a]t the pleading stage, however, it suffices for a plaintiff plausible to allege the three elements set forth in 1106(a)(1)(C) . . . no more, no less." *Cunningham,* 145 S. Ct. at 1028, 1032. Plaintiff's allegations are precisely the kinds of factual allegations the Supreme Court deemed sufficient in *Cunningham* to state prohibited transaction claims.

Plaintiff's prohibited transaction allegations are also identical to the allegations in *Rodriguez* where the district court found that at the pleading stage it was sufficient to allege that defendants violated ERISA's prohibited transaction rules by using "plan assets to reduce its own matching contribution" obligation. *Rodriguez*, 744 F. Supp. 3d at 949 (rejecting argument that plaintiff failed to allege a "transaction" under § 1106). There, the court also rejected the argument that Defendants put forth here that the Supreme Court's decision in *Lockheed Corp. v. Spink*, 517

U.S. 882, 888 (1996) and other decisions, somehow supports that no "transaction" occurred for a prohibited transaction. Motion at 12-13. In rejecting this argument the district court correctly explained that the decision in *Lockheed* does not exempt an employer's use of forfeitures to offset its own contributions from being a prohibited transaction. Instead, *Lockheed* involved no misuse or reallocation of plan assets, and the Supreme Court's narrow holding was limited to a *quid pro quo* that did not threaten plan funding or diminish assets available to participants — unlike the direct financial harm alleged here. *Rodriguez*, 744 F. Supp. 3d at 948-49.

Separately, Section 1106(b)(1), which prohibits self-dealing, is "broader scope" than subdivision (a). *Int'l Bhd. of Painters & Allied Trades Union and Indus. Pension Fund v. Duval*, 925 F. Supp. 815, 825 (D.D.C. 1996). It provides that "[a] fiduciary with respect to a plan shall not – deal with the assets of the plan in his own interest or for his own account," and makes no mention of a "transaction." 29 U.S.C. § 1106(b)(1) (emphasis added). Because "§ 1106(b)(1) does not use the word 'transaction,'" an "affirmative transaction" is not "required" to state a claim. *United Food & Com. Workers Int'l Union-Indus. Pension Fund v. Bank of N.Y. Mellon*, No. 13-cv-4484, 2014 U.S. Dist. LEXIS 129573, at *18 (N.D. Ill. Sept. 16, 2014).

As instructed by the Supreme Court in *Cunningham*, Plaintiff is not required to plead anything more at this stage to state an ERISA prohibited transaction claim and Defendants' motion to dismiss Counts IV and V should be denied.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss Plaintiff's Complaint. If the Court is inclined to grant the motion to dismiss, Plaintiff respectfully requests leave to amend to address any concerns raised by the Court.

28

**RESPECTFULLY SUBMITTED,** this the __2nd__ day of September, 2025.


/s/ *Bradley D. Daigneault*
Bradley D. Daigneault, MSB # 105069

**OF COUNSEL:**

**HORAN & HORAN, PLLC**
M. Kevin Horan , MSB # 2638
1500 Gate Way
Post Office Box  2166
Grenada, Mississippi   38902
Telephone: (662) 226-2185
Facsimile: (662) 2262127
Email: horanmain@horanandhoranlaw.com

**CHIRINOS LAW FIRM PLLC**
Tulio D. Chirinos, (*pro hac vice*)
370 Camino Gardens Blvd., Ste 106
Boca Raton, FL 33432
Telephone: (561) 299-6334
Email: tchirinos@chirinoslawfirm.com

*Attorneys for Plaintiff and Proposed Class*


## CERTIFICATE OF SERVICE

I, Bradley D. Daigneault, attorney for the Plaintiffs, hereby certify that on the __2nd__ day of September, 2025, I electronically filed the foregoing *Memorandum in Support of Plaintiff's Response in Opposition to Defendants' Motion to Dismiss* with the clerk of the Court using the ECF System, which sent notification of such filing to the following:

All ECF participants

/s/ *Bradley D. Daigneault*
Bradley D. Daigneault
Certifying Attorney