UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


JAYSON K. BROWN, INDIVIDUALLY
AND AS A REPRESENTATIVE OF A CLASS
OF PARTICIPANTS AND BENEFICIARIES
ON BEHALF OF THE PECO FOODS, INC.
RETIREMENT SAVINGS PLAN                                    PLAINTIFF

VS.                              CIVIL ACTION NO. 3:25-CV-491-TSL-RPM

PECO FOODS, INC.,
AND DOES 1 TO 10 INCLUSIVE                                 DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Jayson Brown is a former employee of defendant Peco Foods, Inc. (Peco) and was a participant in Peco's 401(k) retirement Plan (the Plan), a defined contribution retirement plan under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). He has brought this action against Peco, which serves as the Plan sponsor and administrator, for alleged violations of its duties as a fiduciary under ERISA. The case is presently before the court on Peco's motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff opposes the motion, and the court, having considered the parties' memoranda, concludes that the motion should be granted.

<u>The Controversy</u>

1

The Plan is funded by employee wage withholdings and employer contributions.  Under the terms of the plan document, Peco is required to make matching contributions to the Plan based on each participant's contributions.  In the event a participant's employment is terminated before becoming vested in the employer's contributions, those contributions are forfeited and become assets of the Plan.  Further, as is pertinent here, the Plan's administrative expenses are shared equally by Plan participants and charged to their accounts.

In this case, plaintiff, acting individually and as the representative of a class of participants and beneficiaries of the Plan, alleges that Peco violated the terms of the Plan and its fiduciary duties under ERISA by using forfeitures to reduce its future matching contribution obligation rather than to defray the Plan's administrative expenses, as a result of which these administrative expenses were borne by Plan participants. He alleges that in failing to apply the forfeitures to pay administrative expenses and to instead apply them solely in its own interest to future employer contributions, Peco breached its fiduciary duties under ERISA, described more fully below, including its duties of loyalty and prudence and to follow the terms of the plan document, and engaged in prohibited

transactions under § 1106(a)(1) and (b)(1).  By its motion, defendant seeks dismissal of all these claims.[1]

<u>Legal Standard</u>

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  <u>Cuvillier v. Taylor</u>, 503 F.3d 397, 401 (5th Cir. 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  In other words, the complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citation

---

[1]    The court finds at the outset that, contrary to defendant's contention, plaintiff does have standing to bring the claims he has asserted.  <u>See</u> <u>Dimou v. Thermo Fisher Sci. Inc.</u>, No. 23-CV-1732 TWR (JLB), 2024 WL 4508450, at *3 (S.D. Cal. Sept. 19, 2024) (finding that the plaintiff suffered a "concrete and particularized" injury traceable to the defendant's conduct, as required to establish standing, where he alleged that when the defendant plan fiduciary failed to use plan forfeitures to defray administrative expenses, the expenses were charged to the Plan participants' accounts, resulting in a proportional reduction in plaintiff's account) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992), which holds that constitutional standing requires injury in fact which is concrete and particularized and actual or imminent, not conjectural or hypothetical).

modified).  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice[;] the court must strip and disregard them from the pleading, even if consistent with liability."  United States v. Encompass Health Rehab. Hosp. of Pearland, L.L.C., No. 25-20093, 2025 WL 3063921, at *2 (5th Cir. Nov. 3, 2025) (citation modified).

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the "court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  The Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010).[2]

ERISA

ERISA was enacted to protect participants and beneficiaries of employee retirement plans by, among other things, "'establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.'"  Pilot Life Ins. Co. v. Dedeaux, 481

---

[2]    The Plan document, which was not attached to the complaint, was included as an exhibit to defendant's motion and may properly be considered by the court on the present motion as it was referenced in the complaint and is central to plaintiff's claim.

U.S. 41, 44, 107 S. Ct. 1549, 1551, 95 L. Ed. 2d 39 (1987)
(quoting 29 U.S.C. § 1001(b)).  The Act imposes on an ERISA
fiduciary, such as Peco, the duty to act "with prudence, loyalty
and disinterestedness."  Langbecker v. Electronic Data Systems
Corp., 476 F.3d 299, 307 (5ᵗʰ Cir. 2007) (citing 29 U.S.C. §
1104(a)).  Specifically, § 1104(a) requires that a fiduciary
"discharge his duties with respect to a plan solely in the
interest of the participants and beneficiaries and ... for the
exclusive purpose of ... providing benefits to participants and
their beneficiaries; and ... defraying reasonable expenses of
administering the plan."  29 U.S.C. § 1104(a)(1)(A).  It imposes
the further duties on plan fiduciaries to act "with the care,
skill, prudence, and diligence under the circumstances then
prevailing that a prudent man" would act, § 1104(a)(1)(B), and
the duty to act "in accordance with the documents and
instruments governing the plan," § 1104(a)(1)(D).  As a
supplement to the fiduciary's general duty of loyalty, the Act,
at 29 U.S.C. § 1106(a)(1) and (b)(1), "categorically bar[s]
certain transactions deemed likely to injure the [benefits]
plan."  Cunningham v. Cornell Univ., 604 U.S. 693, 697, 145 S.
Ct. 1020, 1025, 221 L. Ed. 2d 591 (2025) (citation modified).

     The Act authorizes "any plan participant or beneficiary to
sue on behalf of the plan to remedy a breach of these duties, to
require the fiduciaries personally to 'make good' any 'losses to

the plan' so caused, or to replace the fiduciaries."
Langbecker, 476 F.3d at 307 (quoting 29 U.S.C. § 1132(a)(2); §
1109(a)).

To state a claim for breach of fiduciary duty under ERISA,
a plaintiff must allege: "(1) the Plan is governed by ERISA; (2)
Defendants were fiduciaries of the Plan; (3) Defendants breached
their fiduciary duties under ERISA; and (4) participants of the
Plan suffered losses as a result of such breach."  Seidner v.
Kimberly-Clark Corp., No. 3:21-CV-867-L, 2023 WL 2728714, at *6
(N.D. Tex. Mar. 30, 2023), motion to certify appeal denied, No.
3:21-CV-867-L, 2024 WL 4839163 (N.D. Tex. Jan. 23, 2024).
Defendant's motion focuses on the third element.

Breach of the Plan Document

Plaintiff alleges that defendant breached its fiduciary
duty under § 1104(a)(1)(D) "to act in accordance with the Plan
documents and instruments governing the Plan."  Section 3.05 of
the Plan document addresses forfeitures, stating, in pertinent
part:

> Forfeitures shall be determined at least once during
> each Plan Year.  Forfeitures may first be used to pay
> administrative expenses.  Remaining Forfeitures, if
> any, may then be used to reduce Employer Contributions
> (other than Elective Deferral Contributions) made
> after the Forfeitures are determined.  Forfeitures of
> Matching Contributions that relate to excess amounts
> as provided in Section 3.08, that have not been used
> to pay administrative expenses, shall be used to
> reduce Employer Contributions (other than Elective
> Deferral Contributions) made after the Forfeitures are

6

determined.  Forfeitures that have not been used to
pay administrative expenses or used to reduce Employer
Contributions shall be allocated as soon
administratively feasible but in no event later than
the end of the Plan Year following the Plan Year in
which such Forfeitures are determined as provided in
Section 3.06.  Upon their allocation to Accounts, or
application to reduce Employer Contributions,
Forfeitures shall be deemed to be Employer
Contributions.

Plaintiff maintains that this provision for the treatment
of forfeitures is unambiguous and "mandatory:  forfeitures
'first' must be applied to Plan expenses before any 'remaining
forfeitures' could be used to offset employer contributions."
Plaintiff submits, alternatively, that if the court finds that
the provision is ambiguous, then under Mississippi law, such
ambiguity must be construed against the drafter, Peco.  See
Miss. Transp. Comm'n v. Ronald Adams Contractor, Inc., 753 So.
2d 1077, 1085 (Miss. 2000) (stating that "it is a well-known
canon of contract construction that ambiguities in a contract
are to be construed against the party who drafted the
contract.").

Peco disputes plaintiff's interpretation and insists that
the use of the word "may" permits but does not require that it
apply forfeitures to the payment of administrative expenses
before it may use such funds to reduce its contributions.  That
is, Peco reads the disputed language as providing that "(i) the
fiduciary may elect to use forfeitures on expenses; and if any

7

forfeitures remain after that elected application, the fiduciary may then use the remainder to reduce Peco's contributions." Peco thus submits that the proper reading of § 3.05 allows it to deal with forfeitures by either paying Plan expenses, offsetting contributions, or reallocating forfeitures to plan participants, at its sole discretion. It contends further, though, that even if § 3.05 is ambiguous, then its interpretation, which is reasonable, controls, because under the terms of the plan document, it has discretion to interpret its provisions.

Interpretation of ERISA-regulated plan provisions is governed by federal common law. Green v. Life Ins. Co. of N. Am., 754 F.3d 324, 331 (5th Cir. 2014).

> When construing ERISA plan provisions, courts are to give the language of an insurance contract its ordinary and generally accepted meaning if such a meaning exists... [Courts] interpret the contract language in an ordinary and popular sense as would a person of average intelligence and experience, such that the language is given its generally accepted meaning if there is one...

Id. (citation modified). Generally, when a court finds that plan terms remain ambiguous after applying ordinary principles of contract interpretation, the court applies the rule of contra proferentum and resolves ambiguities against the drafter of the contract. See High v. E-Sys. Inc., 459 F.3d 573, 578–79 (5th Cir. 2006). However, the rule of contra proferentum is inapplicable where an administrator has been granted

8

"interpretive discretion" to construe ambiguous terms in an ERISA plan.  Id.  In such cases, the administrator has the discretion to give plan provisions any reasonable interpretation.  Smith v. United of Omaha Life Ins. Co., Civ. Action No. 3:17CV450TSL-RHW, 2018 WL 3519813, at *3 (S.D. Miss. May 21, 2018).  See Porter v. Lowe's Cos., Inc.'s Bus. Travel Acc. Ins. Plan, 731 F.3d 360, 365 (5th Cir. 2013) (holding that while it is typically true that ambiguities must be construed in favor of the insured, "this is not the case when a plan administrator is given the discretion to interpret the terms of the plan"); Jimenez v. Sun Life Assur. Co. of Canada, 486 F. App'x 398, 410 (5th Cir. 2012) (finding that plan administrator had "discretion to reasonably resolve any ambiguities in the Policy's terms." (citing Conkright v. Frommert, 559 U.S. 506, 130 S. Ct. 1640, 1651, 176 L. Ed. 2d 469 (2010) (holding that "the plan administrator's interpretation of the plan 'will not be disturbed if reasonable'"), and High, 459 F.3d at 578-79 (holding that a plan administrator had discretion to resolve ambiguities in a plan, "exercising its 'interpretive discretion'")); Krishna v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA., 676 F. Supp. 3d 494, 510-11 (S.D. Tex. 2023) (stating that administrator's discretionary authority to interpret plan terms "empowers the administrator to resolve ambiguities," and "courts are only entitled to determine whether

9

the plan administrator's interpretation was reasonable." (citing Smith v. Life Ins. Co. of N. Am., 459 F. App'x 480, 484 (5th Cir. 2012) (per curiam)).  Here, the Plan document clearly gives Peco, as Plan administrator, "complete discretion to construe or interpret the provisions of the Plan, including ambiguous provisions, if any."[3]

A contract term is ambiguous if, "after applying established rules of interpretation, [it] remains reasonably susceptible to at least two reasonable but conflicting meanings."  CNH Indus. N.V. v. Reese, 583 U.S. 133, 138, 138 S. Ct. 761, 765, 200 L. Ed. 2d 1 (2018) (citation modified).  Here, the court, having considered the parties' arguments, is of the opinion that the provision at issue, in view of the use of the permissive term "may," see Leviege v. St. Mary's Hosp., 144 F.3d

---

[3]      Section 9.01, states:
[T]he Plan Administrator has complete control of the
administration of the Plan.  The Plan Administrator
has all the powers necessary for it to properly carry
out its administrative duties.  Not in limitation, but
in amplification of the foregoing, the Plan
Administrator has complete discretion to construe or
interpret the provisions of the Plan, including
ambiguous provisions, if any, and to determine all
questions that may arise under the Plan, including all
questions relating to the eligibility of Employees to
participate in the Plan and the amount of benefit to
which any Participant, Beneficiary, spouse, or
Contingent Annuitant may become entitled.  The Plan
Administrator's decisions upon all matters within the
scope of its authority shall be final.

51, 1998 WL 244999, at *1 (5th Cir. May 4, 1998) ("The word 'may'
is an inherently permissive one; thus, by definition it cannot
require."), does not unambiguously require that Peco apply the
forfeitures to administrative expenses before it may apply them
to offset employer contributions.  Peco's reading, under which
it has discretion to decide how to apply the forfeitures, e.g.,
whether to apply them, first, to pay administrative expenses of
the Plan or to instead offset employer contributions, is a fair
and reasonable interpretation of the provision and thus is
accepted as the correct interpretation.  It follows that Peco's
use of the forfeitures to offset employer contributions did not
violate the terms of the Plan and thus, that plaintiff has
failed to state a claim.

    Breach of the Duty of Loyalty

    Plaintiff maintains that even if the Plan document affords
Peco the discretion to first apply forfeitures to its employer
contributions, Peco has nevertheless breached its duty of
loyalty, which requires that plan fiduciaries to act solely in
the interest of the employees, participants and beneficiaries.
Plaintiff alleges that Peco's failure to first use forfeitures
to reduce administrative expenses contravenes this directive.

    On this point, plaintiff cites Bussian v. RJR Nabisco,
Inc., 223 F.3d 286, 295 (5th Cir. 2000), for the proposition
that the duty of loyalty was breached where, although permitted

by the plan document, an employer recouped surplus assets rather than using them for the participants' benefit.  From this, he reasons that applying forfeitures to cover administrative costs would have benefitted participants by allowing them to retain more funds in their individual accounts, and thus, by applying forfeitures to satisfy its employer contributions, Peco acted in its own self-interest, breaching its duty of loyalty to plan participants.

In response, Peco argues that neither ERISA nor its own plan document, which contains permissive language, requires a fiduciary to maximize participants' pecuniary benefits, but rather only to ensure that they receive their promised benefit under the plan's terms.  See Collins v. Pension & Ins. Comm. of S. Cal. Rock Prods. & Ready Mixed Concrete Ass'ns, 144 F.3d 1279, 1282 (9th Cir. 1998) ("ERISA does not create an exclusive duty to maximize pecuniary benefits.").  It further points out that its use of the forfeitures to offset its contributions is explicitly authorized under applicable Treasury regulations.  See 26 C.F.R. § 1.407-7(a) ("The amounts so forfeited must be used as soon as possible to reduce the employer's contribution under the plan."); see also Sievert v. Knight-Swift Transp. Holdings, Inc., 780 F. Supp. 3d 870, 878 (D. Ariz. 2025) ("To find that Defendant's decision to use forfeited assets to reduce its own contributions is motivated by self-interest and violates

12

its duties of loyalty or prudence would contravene decades of federal regulations suggesting that such a decision is entirely permissible."); <u>Hutchins v. HP Inc.</u>, 767 F. Supp. 3d 912, 924 (N.D. Cal. 2025) (<u>Hutchins II</u>) (same).[4]

Plaintiff's position, that a fiduciary breaches the duty of loyalty by allocating forfeitures to matching contributions rather than applying them to administrative expenses despite compliance with the terms of the Plan document, has been considered and rejected by over a dozen courts to date; only a handful of courts have found merit in the argument. Those rejecting it have relied primarily on three grounds:

> (1) ERISA does not require the fiduciary to maximize profits, only to ensure that participants receive their promised benefits; (2) both ERISA and the terms of the plans themselves authorize the use of forfeiture funds for employer contribution matching; and (3) the plaintiffs' theory would effectively require forfeiture funds to be used for administrative expenses and would create an additional benefit to participants not contemplated in the plans.

<u>Estay v. Ochsner Clinic Found.</u>, No. CV 25-507, 2025 WL 2644782, at *2-3 (E.D. La. Sept. 15, 2025). These were the reasons given

---

[4]    Proposed treasury regulations would also make clear that "forfeitures arising in any defined contribution plan ... may be used for one or more of the following purposes, as specified in the plan: (1) to pay plan administrative expenses, (2) to reduce employer contributions under the plan, or (3) to increase benefits in other participants' accounts in accordance with plan terms." Use of Forfeitures in Qualified Retirement Plans, 88 FR 12282-01.

by the court in <u>Hutchins v. HP Inc.</u>, 737 F. Supp. 3d 851, 862
(N.D. Cal. 2024) (<u>Hutchins I</u>), one of the earliest cases to
address the position advocated by plaintiff, and a succession of
other courts have given some or all of the same reasons for
dismissing such claims.  <u>See</u> <u>Dimou v. Thermo Fisher Sci. Inc.</u>,
No. 23-CV-1732 TWR (JLB), 2024 WL 4508450, at *9 (S.D. Cal.
Sept. 19, 2024) (finding the plaintiff's fiduciary liability
claim, "which mirrors the claim asserted in <u>Hutchins</u>, is
similarly too broad to be plausible"); <u>Sievert</u>, 780 F. Supp. 3d
at 876 (finding claim that "defendant's decision to use
forfeited assets to reduce its own contributions is motivated by
self-interest and violates its duties of loyalty or prudence
would contravene decades of federal regulations suggesting that
such a decision is entirely permissible"); <u>Madrigal v. Kaiser</u>
<u>Found. Health Plan, Inc.</u>, No. 2:24-CV-05191-MRA-JC, 2025 WL
1299002, at *5 (C.D. Cal. May 2, 2025) (reasoning that "because
ERISA's purpose is to protect contractually defined benefits and
to assure reliance on the written plan documents, claims that
rely on the premise that ERISA plan participants are actually
entitled to benefits that go beyond those explicitly laid out
and contractually promised in the subject plan are doomed to
fail") (citation modified); <u>Bozzini v. Ferguson Enters. LLC</u>, No.
22-CV-05667-AMO, 2025 WL 1547617, at *2 (N.D. Cal. May 29, 2025)
(granting defendant's motion to dismiss as plaintiff's theory of

14

liability would "improperly extend ERISA beyond its bounds");
Wright v. JPMorgan Chase & Co, No. 2:25-CV-00525-JLS-JC, 2025 WL
1683642, at *5 (C.D. Cal. June 13, 2025) (relying on Hutchins I
and dismissing plaintiff's claims); McWashington v. Nordstrom,
Inc., No. C24-1230 TSZ, 2025 WL 1736765, at *14 (W.D. Wash. June
23, 2025) (rejecting plaintiff's theory of breach as
"implausible"); Cain v. Siemens Corp., No. CV 24-8730, 2025 WL
2172684, at *4 (D.N.J. July 31, 2025)(finding that "Plaintiff's
theory seeks to impose liability beyond the requirements of
ERISA."); Middleton v. Amentum Parent Holdings, LLC, No. 23-CV-
2456-EFM-BGS, 2025 WL 2229959, at *15 (D. Kan. Aug. 5, 2025) (no
claim where terms of plan allowed defendant to apply forfeitures
to its contributions); Fumich v. Novo Nordisk Inc., No. CV 24-
9158 (ZNQ)(JBD), 2025 WL 2399134, at *6 (D.N.J. Aug. 19, 2025)
(rejecting plaintiff's theory as creating benefit not provided
in plan document); Barragan v. Honeywell Intern., 2025 WL
2383652 (D.N.J. Aug. 18, 2025) (same); Cano v. The Home Depot,
Inc., No. 1:24-CV-03793-TRJ, 2025 WL 2589567, at *4 (N.D. Ga.
Aug. 26, 2025)(same); Armenta v. WillScot Mobile Mini Holdings
Corp., No. CV-25-00407-PHX-MTL, 2025 WL 2645518, at *4 (D. Ariz.
Sept. 15, 2025) (finding the plaintiff failed to state claim
where plans permitted administrator "to reallocate forfeitures
to both administrative expenses and plan contributions, and the
order in which this reallocation occurs" was not defined in

15

plan); Estay, 2025 WL 2644782, at *2-3 (discussing Hutchins I at length and adopting its reasoning); Polanco v. WPP Group USA, Inc., No. 24-CV-9548 (JGK), 2025 WL 3003060, at *8 (S.D.N.Y. Oct. 27, 2025) (citation modified)(dismissing claim "[b]ecause plaintiffs' complaint shows only that the defendants complied with the Plan's lawful terms and provided Plan participants with their benefits due."); Bosque v. Coca-Cola Southwest Beverages LLC, No. 3:25-CV-01270-X, 2025 WL 3171326, at *4 (N.D. Tex. Nov. 13, 2025) (citing Estay and granting motion to dismiss).  But see, e.g. Becerra v. Bank Of America Corp., No. 3:24-CV-921-MOC-DCK, 2025 WL 3032922, at *3 (W.D.N.C. Aug. 12, 2025) (finding plaintiff had "stated sufficient facts to support the claim that Defendants were exercising discretion as fiduciaries," and declining to dismiss, in part, because "[t]he claims and arguments made by both parties involve questions about how to interpret the Plan, and courts have come to different conclusions as to when there is a fiduciary duty under ERISA and what constitutes a breach."); and Rodriguez v. Intuit Inc., 744 F. Supp. 3d 935, 944 (N.D. Cal. 2024) (denying motion to dismiss where plaintiff "plausibly alleged that the Plan did not authorize the specific decisions made by Intuit with respect to the use of forfeited Matching Contributions" and complaint, in any event, "plausibly suggest[ed] that Intuit breached its duty

of loyalty by making decisions that were not in the best interest of Plan participants.").

This court finds the reasoning of Hutchins I, and of the numerous other courts that have rejected plaintiff's position herein, to be compelling and joins them in concluding that where the plan gives the defendant fiduciary the discretion as to how to allocate forfeitures, the fiduciary does not breach its duty of loyalty by choosing to apply them to employer contributions.

In reaching this conclusion, the court finds that the Fifth Circuit's decision in Bussian is distinguishable.  In Bussian, the defendant, upon purchasing a company, retained the obligation of administering pension benefits for the company's former employees under an ERISA-defined benefit pension plan. 223 F.3d at 289.  The defendant terminated the existing plan and purchased an annuity to cover all pension obligations to the participants and beneficiaries of the plan.  Id.  The Plan documents provided that any excess funds would revert to the defendant upon termination of the plan.  Id.  Ultimately, the annuity selected by the defendant sustained significant losses, and as a result, the plaintiffs and some other Plan participants did not receive their full benefits.  Id. at 293.  The plaintiffs sued, alleging that in selecting the new annuity, the defendant sought to maximize the size of its reversion, in violation of its fiduciary duties.  The court held that while

17

the terms of the Plan and ERISA allowed the defendant to recoup surplus assets, that did not mean that its acts "undertaken to implement a plan's termination may deviate from ERISA's command that a 'fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.'" Id. at 295 (quoting § 1104(a)(1)). The court held, "The question whether an employer has access to a reversion because of a plan's termination is separate from the issue of the size of that reversion. Undertaking steps to maximize the size of the reversion *with the direct result of reducing benefits* would be a violation of ERISA's commands." Id. at 296 (citation modified) (emphasis added).

This case is clearly distinguishable. Here, unlike Bussian, in which the plan participants did not receive their promised benefits, there is no allegation that any plaintiff did not receive the full benefits to which he/she was entitled under the plan. See Estay, 2025 WL 2644782 at *3 (duty of fiduciary under ERISA is to ensure participants receive their promised benefits). Defendant's motion will be granted as to this claim.

Breach of Duty of Prudence

"A claim for breach of the duty of prudence will survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed." Sacerdote v. New York Univ., 9 F.4th 95,

108 (2d Cir. 2021); see also Pizarro v. Home Depot, Inc., 111
F.4th 1165, 1173 (11th Cir. 2024) (citing Sacerdote and stating
with regard to breach of duty of prudence, "the inquiry centers
not on the results of an investment, but on a fiduciary's
process for choosing that investment."); Main v. Am. Airlines
Inc., 248 F. Supp. 3d 786, 793 (N.D. Tex. 2017) ("The prudence
standard normally focuses on the fiduciary's conduct in making
investment decisions, and not on the results.").

Plaintiff alleges that Peco, "[i]n deciding how to allocate
forfeitures, [] utilized an imprudent and flawed process," and
further, that there

> are no facts or circumstances throughout the class
> period that makes discretionary decisions to use
> [forfeitures] to reduce contributions consistent with
> discharging the Plan Fiduciaries' duties with respect
> to the Plan solely in the interest of the participants
> and their beneficiaries and for the exclusive purpose
> of providing benefits to participants and their
> beneficiaries and defraying reasonable expenses of
> administering the Plan.

In support of this claim, plaintiff again relies on
Bussian, this time for the proposition that defendant's motion
should be denied because he is entitled to discovery to
determine whether defendant's internal decision-making process
was "thorough" and "impartial".  See Bussian, 223 F.3d at 302-
302 (reversing district court's grant of summary judgment to
fiduciary and stating, "A reasonable fact finder could conclude

19

that [the fiduciaries] failed to structure, let alone conduct, a thorough impartial investigation....”).

Peco argues in response that this claim fails as a matter of law as plaintiff has not alleged any facts to show that it followed an imprudent process.  Indeed, the complaint makes only a conclusory allegation that defendant used an imprudent process in deciding how to allocate the forfeitures.  There are no allegations suggesting any facts from which it could be inferred that defendant’s process was imprudent.  See Encompass Health Rehab. Hosp. of Pearland, L.L.C., 2025 WL 3063921, at *2. Rather, plaintiff’s claim apparently relies entirely on an implication that *any* use of the forfeitures other than to defray administrative costs amounts to a breach of the duty of prudence.  This court, like the majority of those that have addressed such claims, rejects plaintiff’s theory as it “would impose categorical liability any time a [fiduciary] choses to use forfeitures to reduce its own contributions.”  Cain, 2025 WL 2172684, at *5 (citing Hutchins I, 737 F. Supp. 3d at 862); Estay, 2025 WL 2644782, at *5 (concluding that complaint failed to set out specific facts warranting inference of imprudent conduct and declining to rely on plaintiff’s asserted “implication that because the fiduciaries chose to allocate the Forfeitures to matching contributions instead of administrative expenses, then they could not have undertaken a prudent

20

decision-making process."). "'Where, as here, all Plan participants received all of their promised benefits and Plaintiff is unable to point to any circumstances rendering the case unique among the countless ERISA plans permitting the same use of forfeitures, the Court still simply finds Plaintiff's claim implausible.'" Estay, 2025 WL 2644782, at *5 (quoting Cain, 2025 WL 2172684, at *5). Defendant's motion as to this claim will be granted.

Prohibited Transactions

Plaintiff charges that Peco engaged in prohibited transactions and/or self-dealing in violation of 29 U.S.C. § 1106 by using the forfeitures to offset employer contributions.

ERISA provides that a fiduciary

shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--
  (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
  (B) lending of money or other extension of credit between the plan and a party in interest;
  (C) furnishing of goods, services, or facilities between the plan and a party in interest;
  (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
  (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

29 U.S.C. § 1106(a)(1). It also prohibits self-dealing by a fiduciary, stating that a fiduciary shall not "deal with the assets of the plan in his own interest or for his own account."

21

<u>Id.</u> § 1106(b)(1).

Numerous recent decisions addressing this issue have held that the allocation of forfeitures to offset employer contributions is not a "prohibited transaction" or self-dealing under § 1106. In <u>Hutchins I</u>, the court explained its reasoning for reaching this conclusion, stating, in pertinent part, as follows:

> The Supreme Court has held that the payment of benefits is not a "transaction" under the prohibited transactions provision. <u>See</u> [<u>Lockheed Corp. v. Spink</u>, 517 U.S. 882, 892-93, 116 S. Ct. 1783, 1790, 135 L. Ed. 2d 153 (1996)]. The Supreme Court noted that the types of transactions enumerated in § 1106(a)(1) "are commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length." <u>Id.</u> at 893, 116 S. Ct. 1783. The Court emphasized that these transactions "involve uses of plan assets that are potentially harmful to the plan." <u>Id.</u> . . . Plaintiff's allegations show that forfeited amounts remain Plan assets and are merely reallocated to provide pension benefits to other employees through use as matching contributions. But this is not a prohibited transaction. In addition, the fact that reallocation of the forfeited amounts will reduce the amount that HP contributes as matching contributions in the future does not make this a transaction for purposes of § 1106. <u>See</u> [<u>Black v. Greater Bay Bancorp Exec. Supplemental Comp. Benefits Plan</u>, No. 16-CV-00486-EDL, 2017 WL 8948732, at *8-9 (N.D. Cal. Jan. 18, 2017)] (holding that the use of plan assets to fund a benefit that the employer might otherwise fund was not a prohibited transaction). Moreover, this is not similar to the types of commercial transactions contemplated by Congress because Plaintiff does not allege any facts showing that the reallocation of forfeited amounts in this way put the Plan at "a special risk of plan underfunding." <u>Spink</u>, 517 U.S. at 893, 116 S. Ct. 1783. ... Plaintiff does not

allege that HP has failed to meet its obligations to
contribute to the Plan.

737 F. Supp. 3d at 868 (citation modified).  By far, the

majority of courts considering the issue are in agreement with

this reasoning.  See, e.g., Dimou, 2024 WL 4508450, at *11

(quoting Hutchins, and holding that "reallocating forfeitures in

the plan 'to provide pension benefits to other employees through

use as matching contributions' is not a prohibited transaction"

and noting that "[a]n intra-plan transaction, like forfeiture

reallocation, is unlike a sale or leasing of property to a

third-party"); Sievert, 780 F. Supp. 3d at 880 (adopting

reasoning of Hutchins and Dimou in finding that no prohibited

transaction was alleged and specifically agreeing that "the

reallocation of Plan assets to provide benefits to employees as

matching contributions is not a prohibited transaction");

Middleton, 2025 WL 2229959, at *16 (finding reasoning of

Hutchins and Dimou persuasive, and concluding no claim was

stated because "Plaintiffs' allegations demonstrate that the

forfeited funds remained in the Plans.  Thus, there are no

allegations that the Plans were injured, harmed, or

underfunded."); Estay, 2025 WL 2644782, at *6 (holding that

allocation of Forfeitures was merely a reallocation of assets

within the plan and hence not a transaction as contemplated by either subsection of § 1106).[5]

This court, likewise, finds this reasoning persuasive, and hence concludes that Peco's alleged allocation of forfeitures to employer contributions is merely an interplan reallocation of plan assets which functions as a benefit to the plan and, therefore, is not a transaction within the contemplation of § 1106.[6]

Plaintiff has thus failed to state claims for prohibited transactions and therefore, defendant's motion will be granted as to these claims.

Conclusion

---

[5]    Other courts so holding include, McWashington, 2025 WL 1736765, at *14; Cain, 2025 WL 2172684, at *4; Madrigal, 2025 WL 1299002, at *5; Wright, 2025 WL 1683642, at *5; Barragan, 2025 WL 2383652; Cano, 2025 WL 2589567, at *4.  Not all are in agreement, however.  See Rodriguez, 744 F. Supp. 3d at 949 (finding that plaintiff's allegation that the defendant reallocated undisputed plan assets to reduce its own matching contribution alleged "a 'use' of plan asserts for the purposes of § 1106(a)(1) (as well as a 'dealing with' plan assets for the purposes of § 1106(b)(1))", and hence "allege[d] a 'transaction' that is consistent with the Supreme Court's interpretation of 'transaction' under 1106(a)(1).").

[6]    The court acknowledges but rejects plaintiff's argument that § 1106(b) does not require a "transaction."  See Buescher v. N. Am. Lighting, Inc., 791 F. Supp. 3d 873, 897 (C.D. Ill. 2025) (finding little difference between "dealing with plan assets" in § 1106 (b) and "transacting" with them as set out in § 1106(a)).

Based on the foregoing, it is ordered that defendant's motion to dismiss is granted.

A separate judgment will be entered in accordance with Rule 58 of the Rules of Federal Procedure.

SO ORDERED this 14th day of November, 2025.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE